393 So.2d 1337 (1981)
Larry EDGE
v.
STATE of Mississippi.
No. 52318.
Supreme Court of Mississippi.
February 18, 1981.
*1338 John B. Farese, Farese, Farese & Farese, Ashland, Joseph B. Garretty, Corinth, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
This is an appeal from the Circuit Court of Prentiss County, Mississippi, wherein the appellant, Larry Edge, was tried and convicted of the crime of murder and sentenced to life imprisonment. From that judgment and sentence, the appellant appeals. We reverse and render as to murder, but remand for a new trial on manslaughter.
This case involves the death of John Wayne Murphy at the hands of the appellant, Larry Edge. The persons involved in this unfortunate episode were the appellant, Larry Edge, his wife, Geneva Edge, John Wayne Murphy, the deceased, and his girlfriend, Eva Epperson. These four people were friends and an extramarital relationship developed between the deceased, John Wayne Murphy and the appellant's wife, Geneva Edge. At the time of the death of John Wayne Murphy, the four were at Elder's Lake, having gone there at the insistence of the deceased. Geneva Edge had earlier told Murphy, in the presence of Larry Edge and Eva Epperson, a witness for the state, that she wanted to break off their relationship and that it was final. While sitting around a fire, Murphy, who had been drinking heavily and taking codeine pills, *1339 made the statement that if he could not have Geneva no one could. He sent Eva to look for wood to put on the fire. While Eva was gone, Murphy grabbed Geneva, wrestled her to the ground, and while holding her down said that he was going to have her and that if he could not have her that he would kill her and kill himself. The appellant, Larry Edge, attempted to pull Murphy off of Geneva but was cut on the hand with a knife by Murphy. Edge thereupon went to his car from which he took a shotgun, placed a shell in it, and went back and placed it close to Murphy's head and shot him. The entry wound made by the shotgun blast was located behind the decedent's left earlobe. The exit wound involved the entire jaw area of the right side of the face. Pellet wounds were found in the upper medial portion of decedent's right arm. Geneva testified that the deceased was so close to her that the shotgun blast caused blood to get on her coat.
The appellant argues that he was justified in shooting Murphy in defense of his wife whose life was being threatened. Mississippi Code Annotated section 97-3-15 (1972).
He also contends that at most he would only be guilty of manslaughter. Mississippi Code Annotated section 97-3-31 (1972) states:
Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter. (Emphasis added).

I.
The appellant first contends that "[He] was entitled to a directed verdict of acquittal at the close of all of the evidence in this case, there being no competent evidence to contradict appellant's version of the homicide which made out a clear case of justifiable homicide," claiming the benefit of the rule laid down in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).
The appellant argues that the action taken in defense of his wife clearly came within the statutory definition of justifiable homicide under section 97-3-15 which provides, in part, as follows:
... killing of a human being by the act ... of another shall be justifiable... . (f) When committed in the lawful defense of ... any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.
He argues that since there is no material contradiction in the evidence presented by the eyewitnesses to the homicide and the state's witness, Eva Epperson, their version must be accepted as true, contending that it is reasonable and is not contradicted in material particulars by any other witness or by the physical facts or by the facts of common knowledge. Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). In Weathersby, the Court stated:
[W]here the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. (165 Miss. at 209, 147 So. 481).
We have meticulously considered this record and are of the opinion that the requirements of Weathersby are not met. Geneva Edge testified that she and the deceased were so close at the time of the shotgun blast that his blood got on the front of her coat. She also testified that she was wearing the same coat when she gave her statement to law enforcement officers later that night. However, the officers and others who saw Mrs. Edge that night testified that they saw no blood on her clothing. The coat was not introduced into evidence nor was its absence explained. The close proximity of Geneva to Murphy (he allegedly had her down on the ground) was a crucial element of appellant's defense of justifiable homicide.
*1340 Therefore, since the material evidence is in conflict, we are of the opinion that this is not a case for the application of the Weathersby rule. As we have stated before, it is a rare case that meets all the requirements of Weathersby. However, we are of the further opinion that the evidence does not rise to that high degree which would justify a jury in finding the defendant guilty of murder beyond a reasonable doubt and his motion for a directed verdict as to the charge of murder should have been sustained, leaving only the charge of manslaughter to be considered by the jury.

II.
The appellant assigns as error that "The trial court erred in allowing improper jury argument on the part of the state."
In his closing argument to the jury, the county attorney told the jurors: "The law doesn't require you to know that this man is guilty. All you have to do is believe it beyond a reasonable doubt."
Defense counsel objected to the prosecuting attorney's argument, but his objection was overruled.
In the case of Clemons v. State, 320 So.2d 368 (Miss. 1975), this Court reaffirmed the principle that it is the trial court, and not the prosecutor, who advises the jury on the law. In Clemons, the district attorney told the jury in a possession of marijuana case that:
"The court does not tell you that you have to know the defendants are guilty, and you do not have to know they are guilty before you can find them guilty." (320 So.2d at 372).
In Clemons, the Court went on to rule as follows:
In the first place, it is the duty of the trial judge to instruct the jury and not the district attorney. Pearson v. State, 254 Miss. 275, 179 So.2d 792 (1965); Mississippi Code Annotated section 99-17-35 (1972).
In Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949), this Court pointed out that the trial court should have sustained an objection to a legal instruction verbally given by the district attorney to the jury. In that case, however, the verdict of the jury was affirmed. Nevertheless, the Court said: "In this state it is the province of the trial judge to announce the law to the jury." 206 Miss. at 755, 40 So.2d at 614. See also Harris v. State, 207 Miss. 241, 42 So.2d 183 (1949); 23A C.J.S. Criminal Law § 1110, at 217 (1961).
This instruction has been condemned by this Court so often that it seems unnecessary to continue to cite authority on this issue. See some of the cases listed in Kent v. State, 241 So.2d 657 (Miss. 1970).
Now we find that although the trial judges have ceased to use this instruction, the district attorney in this case not only used the instruction verbally in his argument, he argued with the trial judge when the judge sustained an objection to the argument.
In the case of Pearson v. State, 254 Miss. 275, 179 So.2d 792 (1965), where the trial judge permitted the district attorney to give to the jury a verbal instruction, this Court said: "For the error, growing out of this incident in the closing argument, the cause must be and it is, reversed and remanded for a new trial. 254 Miss. at 293, 179 So.2d at 800. (320 So.2d at 372).
The remarks of the prosecuting attorney were error in Clemons causing reversal and is reversible error here requiring that the case be remanded to the circuit court for a trial on the charge of manslaughter.

III.
The appellant next assigns as error that the trial court erred in refusing to allow surrebuttal testimony by one Jackie Hamblin, who would have testified that Mrs. Edge's jacket did in fact have blood all over it as support of his contention that he shot Murphy in defense of his wife. The state put on several rebuttal witnesses. Sheriff Martin testified that he did not see any blood on Mrs. Edge's clothing. Joey Cobb testified that he did not see any blood on Mrs. Edge's clothing. William Shouse testified to the same effect.
*1341 The appellant argues that the state's rebuttal testimony tore the heart out of his defense of justifiable homicide. Mrs. Edge testified that she had blood all over her clothing as a result of the shooting. She said that Murphy was attacking her when he was shot. Inherently, the state's rebuttal testimony was prejudicial because it, by inference, denied the validity of appellant's version. If Mrs. Edge's coat was not covered with blood, then an argument could be made that Larry Edge did not shoot John Wayne Murphy in an attempt to save his wife's life. Appellant tried to counter this prejudice by calling Jackie Hamblin, who testified outside the presence of the jury that Mrs. Edge's jacket had blood all over it.
The trial court refused to allow the Hamblin surrebuttal testimony to go to the jury. The court stated that while it was not trying to restrict anyone from offering testimony, the effect of allowing surrebuttal would be continual testimony, "... and we never would get out of here."
The rule is well settled in this state that where rebuttal evidence is introduced, surrebuttal should be allowed, particularly where to fail to do so would be prejudicial. (Nicholson v. State, 243 So.2d 552 at 555 (Miss. 1971)).
As stated in an earlier part of this opinion, a key part of the appellant's evidence in support of his claim of justifiable homicide was that the deceased had grabbed Mrs. Edge, had her on the ground, was over her and threatening to kill her, with a knife at her throat, and that Murphy and Mrs. Edge were so close that blood got all over her coat as a result of the shotgun blast. After several state's witnesses testified that they saw no blood on her clothing, fundamental fairness and due process required that the appellant be given an opportunity to call the witness, Jackie Hamblin, in an attempt to refute the state's position and to corroborate Mrs. Edge's testimony on this very material and crucial point. For this reason, the judgment and sentence of the trial court must be reversed and remanded for a new trial.

IV.
The appellant next assigns as error that the trial court erred in refusing to grant a recess because of the exhaustion of appellant's trial counsel.
After the state rested its case, the following colloquy took place between defense counsel and the court:
BY MR. GARRETTY: Your Honor, comes the defendant and moves the Court to recess this trial until tomorrow, and assign as reason for that the fact that I am extremely fatigued at this point. I have been at this trial all day long; the jury has been here all day long; they have had a chance to listen to the State's side of this case when they were relatively fresh. If we continue on with this, I don't known as a matter of fact, I don't think I can do the job adequately, as far as I am personally concerned, on behalf of the defendant, in getting into  going to get into a very difficult part of this job and I think I should have the right to be mentally alert. I am not at this point. I doubt the jury would be alert at this point and I frankly, myself, Your Honor, do have to take some medication. My usual dosage is one a day, and they will usually send me through the day. I am to the point now where I just don't feel I can physically continue with this trial, and represent Mr. Edge and I move that the Court recess this case until in the morning. I have now been down here, Your Honor, over ten hours with one aspect of this case or another, and quite frankly, that's long enough for me to try to work on a case like this, concerning a murder case.
BY JUDGE WICKER: All right. Of course, I advised counsel early this morning for the State and Defendant that I would like to speed it along as much as I could. It is imperative I get through the case tomorrow. I have some official business that I have got to attend to, and it is very imperative that I be there on Friday. And I don't really see any reason why this case couldn't be tried without *1342 any problem in two days. As far as the testimony is concerned, we started taking testimony at three-thirty. That means we have been on the trial of the case for three hours, and the matter of selecting the jury, which was counsel for the State was taking a great deal of time and counsel for defendant was principally waiting around to see what the report was from counsel for the State. I believe it is imperative in order to get through with this case tomorrow that we go awhile longer tonight. I don't see any reason why the jury would be particularly fatigued, any more than the Court would be. I have been trying a case for two days, in addition to taking care of a good many arraignments, in the meantime, we were rather late last night, and the Court seems to be in pretty good shape physically, fairly fresh, and I don't believe counsel ought to be in any worse shape than I am in. I am going to overrule the objection, and we will take that into consideration in deciding how late we ought to go. Any further motions?
Ordinarily, trial judges have broad discretion in determining when trials will begin and how long they will continue on any given day. However, participating in the trial of a case as an attorney is both mentally and physically exhausting. Trial courts should keep this in mind and not require attorneys, over their objections, to continue beyond their limits. Nor should the court begin a case when there is not sufficient time, for any reason, to conclude it without pushing the attorneys beyond their physical capabilities. To do so deprives a defendant in a criminal case of his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States and Art. 3, Section 26 of the Mississippi Constitution. For a lengthy discussion of this principle, see Thornton v. State, 369 So.2d 505 (Miss. 1979).
At the time the motion for the court to recess was made by the defendant's attorney, Mr. Garretty, it was 6:30 p.m. Although testimony had only been taken for approximately three hours, it is undisputed that Mr. Garretty had been involved in one aspect of the case or another, including the selection of the jury, for over ten hours that day and explained to the court that he was "extremely fatigued." We are of the opinion that under the circumstances presented the appellant was denied effective assistance of counsel at a most crucial stage of his trial, i.e., the beginning of the presentation of his defense. For this reason, the judgment of the trial court and sentence must be reversed and the cause remanded for a new trial.
Upon remand, if the appellant again moves for a change of venue and the evidence is as strong in support thereof as is shown by this record, it should be granted.
For the reasons stated above, the judgment and sentence of the appellant must be reversed and the cause is remanded to the circuit court for a new trial on manslaughter.
REVERSED AND REMANDED FOR A NEW TRIAL ON MANSLAUGHTER.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., SUGG, BROOM, LEE and BOWLING, JJ., concur.
HAWKINS, J., took no part.