## STATE OF CONNECTICUT *v.* SCOTT CAVELL
### (15161)

Peters, C. J., and Callahan, Borden, Berdon and Katz, Js.

---

Argued September 27, 1995—decision released January 23, 1996

*Richard Emanuel*, assistant public defender, for the appellant (defendant).

*Harry Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Susan C. Marks*, supervisory assistant state's attorney, and *John M. Massameno*, assistant state's attorney, for the appellee (state).

BORDEN, J. The issues in this certified appeal are whether the Appellate Court properly concluded that: (1) the trial court acted improperly in excluding the testimony of a defense expert witness, due to a violation of a sequestration order, but its ruling was harmless; and (2) the trial court acted properly by permitting the state to present certain forensic evidence in rebuttal but refusing to allow the defendant to present surrebuttal

evidence.[1] The defendant, Scott Cavell, appeals from the judgment of the Appellate Court affirming his conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70.[2] Because we agree with the decision of the Appellate Court on both of these certified issues, we affirm the judgment of the Appellate Court.

Certain of the facts are undisputed. The victim lived in Cheshire with her husband and four children in a house owned by the victim's mother. On the evening of May 3, 1990, the victim, who had been drinking, and her mother had an argument. The victim then took her

[1] We granted the defendant's petition for certification to appeal, limited to the following questions: "1. Was the Appellate Court correct in concluding that any error in the trial court's exclusion of the testimony of a defense expert witness, due to an alleged violation of a sequestration order, was harmless?

"2. Was the Appellate Court correct in concluding that the trial court acted properly in allowing the state to present forensic evidence in rebuttal and, if so, in preventing the defense from introducing surrebuttal evidence?" *State* v. *Cavell*, 231 Conn. 947, 653 A.2d 828 (1994).

[2] General Statutes § 53a-70 provides: "Sexual assault in the first degree: Class B felony: One year not suspendable. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person, or (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

The defendant was charged with kidnapping in the first degree in violation of General Statutes § 53a-92, and with two counts of sexual assault in the first degree in violation of § 53a-70, one count involving forcible fellatio and one count involving forcible vaginal intercourse. He was acquitted of kidnapping and on the sexual assault count involving forcible fellatio, and was convicted on the sexual assault count involving forcible vaginal intercourse.

children and left the house, driving away in her car. Family members notified the police, who stopped the victim and arrested her for disorderly conduct and criminal mischief. The children were taken home and the victim, after being processed at the police station, was permitted to leave. Unable to contact her husband, the victim called a friend, who, shortly before midnight, dropped the victim off at a bar in Southington. Still unable to contact her husband, she ordered a drink at the bar, where she met the defendant and his girlfriend. The victim complained to the defendant about her arrest and explained that she was having difficulty finding a ride home. After the defendant had offered the victim a ride home, the victim, the defendant and his girlfriend left the bar together. Only then did the victim realize that the defendant and his girlfriend were driving separate cars. The defendant told his girlfriend that he would drive the victim home and then meet the girlfriend at their home in approximately ten minutes. The victim got into the defendant's car. They were stopped almost immediately by the Cheshire police because the defendant's car had a broken taillight. The police officer, who had known the victim for many years, observed her in the passenger seat and later testified that she appeared to be fine. The police officer gave the defendant a verbal warning and released the parties. Instead of taking the victim home, the defendant drove her to a secluded, wooded area.

With respect to subsequent events, the parties diverge in their versions of what occurred. The victim testified at trial that when they had arrived at the secluded area, the defendant had gone to the passenger side of the car and had asked her to get out. When the victim refused to leave the car, the defendant grabbed her and dragged her out by her hair. He then dragged her, on her back, across a gravel driveway to a leafy area, where he pinned her down, removed portions of

her clothing, and attempted to force her to engage in fellatio. The victim testified further that she had been able to distract the defendant and run back to the car. The defendant caught up with the victim in the car and forced her to have vaginal intercourse on the front passenger seat, during which he ejaculated. The defendant then took the victim home, where she called the police and reported having been sexually assaulted by the defendant.

The defendant testified that the victim had asked him to take her to a secluded area, where she had consented to sexual intercourse. He testified that the intercourse had taken place in a leafy and rocky area away from the car, and he denied having had intercourse inside the car. He stated that on the ride back to the victim's house, she had pulled leaves and debris from her hair. *State* v. *Cavell*, 34 Conn. App. 276, 280, 641 A.2d 426 (1994).

The defendant appealed from the judgment of the trial court to the Appellate Court, which affirmed the judgment. Id., 276. We granted the defendant's petition for certification, and remanded the case for reconsideration in light of our decision in *State* v. *Robinson*, 230 Conn. 591, 646 A.2d 118 (1994) (prejudice caused by trial court's failure to enforce sequestration order merited new trial). *State* v. *Cavell*, 231 Conn. 902, 645 A.2d 1021 (1994). Upon reconsideration, the Appellate Court affirmed its previous judgment. *State* v. *Cavell*, 36 Conn. App. 912, 649 A.2d 262 (1994). This second certified appeal followed.

I

We first address the defendant's claim that the Appellate Court incorrectly concluded that the trial court's exclusion of the testimony of one of the defendant's medical expert witnesses, due to the violation of a

sequestration order,[3] was harmless error. The defendant argues that the trial court's improper exclusion of his expert witness' testimony violated his constitutional right to present a defense and, even if the impropriety was not of constitutional magnitude, the Appellate Court used an inappropriate standard in applying the harmless error doctrine. We disagree.

The trial began on April 23, 1991. Prior to the taking of any evidence, the court asked both parties whether either of them intended to request a sequestration order. Both the state and the defendant represented that a sequestration order was not necessary.

The victim testified on the first day of the trial, stating that after the defendant had dragged her across the gravel driveway to the leafy area and had attempted to force her to engage in fellatio, she had escaped and had run back to the car. She further testified that the defendant then had forced her to have intercourse on the front passenger seat of the car, during which, she believed, he had ejaculated.

As additional evidence in its case-in-chief, the state called as a witness Sultan Quarishi, the emergency room physician who had examined the victim. Quarishi testified that the victim's injuries were consistent with her having been dragged across the ground, but conceded on cross-examination that it was impossible to determine definitively what had caused the injuries.

---

[3] Practice Book § 876 provides: "The judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which he is not testifying."

General Statutes § 54-85a, which also addresses sequestration of witnesses, provides: "Sequestering of witnesses in criminal prosecution. In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying."

The state also called as a witness Marybeth Guman, a criminalist at the state police forensic laboratory. Guman testified that hair had been found in the defendant's car and on clothing belonging to both the victim and the defendant. She testified that the hair was consistent with that of the victim, that it was remarkable in amount, and that she had never encountered a crime scene with so much hair linked to one person.

When the defendant commenced the presentation of his case, he objected to the fact that one of the detectives who had testified on behalf of the state was seated at counsel table with the assistant state's attorney, assisting with the trial. The defendant, claiming that the detective's presence at counsel table was prejudicial, moved that the detective be required to leave. After the court denied the motion, the defendant moved, pursuant to Practice Book § 876; see footnote 3; that the detective be sequestered. Subsequently, the state moved for a mutual sequestration order, which the court issued.[4]

The defendant called as a witness Michael Conroy, a surgeon, to testify about the cause of the victim's injuries, particularly scratches and abrasions on her back. After Conroy had given preliminary testimony about his background, the state requested an offer of proof regarding the evidence Conroy would be offering and his credentials to offer that evidence. During the

[4] The trial court issued the following sequestration order: "Well, my sequestration order will apply to witnesses both for the state and for the defense. Also as to those witnesses that testified previously and/or may testify in the future. The sequestration order, because it's now [a]ffecting a witness who has already testified for the state will also apply for the defense. Those witnesses [who] have testified for the defense will not be allowed access into this courtroom while the case is on trial so that the application is made fairly to both sides. Then of course the order should include . . . witnesses who ha[ve] concluded testifying and the attorneys will so advise them not to communicate with any other witnesses as to what they were asked or what they answered."

offer of proof, Conroy revealed that he had been provided with, and had reviewed the preceding evening, a transcription of a portion of Quarishi's testimony. The trial court determined that the defendant had violated the sequestration order by providing Conroy with a copy of Quarishi's testimony. As a sanction for this violation, the court precluded Conroy from testifying further, and struck the testimony that he had already given.[5] The court allowed the defendant nine days to obtain the services of another witness to testify in lieu of Conroy. The defendant retained another surgeon, Jack Huse, who subsequently testified as an expert witness regarding the victim's injuries.

During the offer of proof regarding Conroy's proposed testimony, Conroy, a graduate of Yale College and Cornell Medical School, had acknowledged that there are forensic criminalists who are trained in the reconstruction of crimes, but that he had received no such training. He stated that his knowledge regarding the etiology of wounds had come "from experience" rather than from specific training. He also stated that the only time he had visited the secluded area where the assault had taken place, in order to observe the conditions there, was on the preceding day, more than one year after the assault. Conroy proposed to testify that the victim's injuries were consistent with her hav-

---

[5] The defendant objected, claiming that Conroy did not fall within the terms of the sequestration order until he actually testified. The defendant argued that, because the sequestration order was not issued until after the conclusion of the state's case, Conroy, had he chosen to do so, could have sat in court and listened to Quarishi's testimony. The trial court ruled, however, that the sequestration order went into effect the moment after it was issued and applied to all future witnesses in the case. The trial court determined that the gravamen of the defendant's violation of the sequestration order was that he had released Quarishi's testimony to Conroy, who admitted he had not read it until the preceding evening, while the sequestration order was in effect. The record does not reflect, however, whether the transcript was delivered to Conroy before or after the sequestration order had been issued.

ing engaged in active sex in the leafy area but were inconsistent with her having been dragged head first over the gravel driveway.

Huse, a vascular surgeon, was a graduate of Dennison University and Hahneman University Medical School. He, too, lacked training in crime reconstruction. He testified that he had never received any training in the area of forensic science, had never taken any courses in crime scene reconstruction, and had no qualifications or credentials as a criminalist. Like Conroy, Huse had not visited the crime scene until shortly before he was to testify. Huse testified that the victim's injuries could have resulted from consensual sexual intercourse in the leafy, rocky area at the site of the assault. He also testified that it would be very difficult to drag someone by the hair from behind, and that "[t]he first response of someone who has [her] hair pulled and the attempt to be dragged from behind is that [she] will turn around and right [herself] so [she] will be pulled forward rather than backwards." Huse further testified that if the victim's shirt were on and she were being pulled backward, as she claimed, the shirt would have protected her back and that the angle of pulling would have kept her back off the ground, thus avoiding injuries to her back. In addition, Huse testified that had the victim and the defendant had consensual intercourse in the leafy area, and had the victim, on the ride home, attempted to remove the leaves and other debris, a substantial amount of hair follicles would have come out and would have been present in the car.

## A

The defendant argues that precluding Conroy from testifying was incorrect and of constitutional proportion because it prevented the defendant from presenting an effective defense. Maintaining that "[m]edical experts are not fungible"; *State* v. *Cavell,* supra, 34

Conn. App. 299 (*O'Connell, J.*, dissenting); and that "[o]ne expert may have more 'presence' and greater credibility, and thus be viewed by the trier of fact as more persuasive," the defendant urges that this court "should not assume that the second choice—a choice 'forced' upon the defense—was as good as its first choice." We are not persuaded.

We note, first, that for purposes of this analysis, we will assume that the trial court's exclusion of Conroy's testimony was an excessive sanction, and was, therefore, an abuse of discretion. We make this assumption, however, not because we have determined it to be so, but because that was the Appellate Court's stance in deciding this case, and that was how we certified the relevant question. We therefore review the case in that procedural posture.

Ordinarily, the remedy for violation of a sequestration order lies in the trial court's discretion. *State* v. *Falby*, 187 Conn. 6, 27, 444 A.2d 213 (1982). We acknowledge, however, that, under particular circumstances, the unjustified exclusion of a witness' testimony can amount to a deprivation of the defendant's right to present a defense. See, e.g., *Braswell* v. *Wainwright*, 463 F.2d 1148, 1155–56 (5th Cir. 1972) (holding that trial court's discretionary exclusion of sole corroborating witness' testimony denied defendant fundamental constitutional right). If an impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. *State* v. *Colton*, 227 Conn. 231, 253–54, 630 A.2d 577 (1993).

We acknowledge that experts are not fungible. In this case, however, both Conroy and Huse were surgeons, neither of whom specialized in the area of crime reconstruction.[6] Yet, despite their lack of experience in the

---

[6] We are not presented with, and therefore need not address, a case in which, for example, the defendant had originally secured the services of a

field of crime reconstruction, both Conroy and Huse were asked to testify regarding how this incident could have happened, given the victim's injuries and the conditions present at the site of the assault. Although, as the defendant suggests, Conroy attended what some might regard as more prestigious schools than those Huse had attended, the subject of the testimony that both Conroy and Huse were asked to provide was not within the core of those witnesses' expertise, and we are not convinced that, for such a purpose, Conroy had credentials that were superior to those of Huse. We are similarly unpersuaded that there was anything in the proposed testimony of Conroy that was substantively different than what was actually presented by Huse. In fact, Huse's testimony that a person would not be dragged in the manner described by the victim is more supportive of the defendant's rendition of the facts than Conroy's proposed testimony. Precluding Conroy from testifying, therefore, did not prevent the defendant from presenting an effective defense and did not violate his constitutional rights.

B

Because we conclude that any impropriety in this case is nonconstitutional, the defendant bears the burden of demonstrating that the trial court's error caused him harm. *State* v. *Dennison*, 220 Conn. 652, 661, 600 A.2d 1343 (1991); *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990). The defendant maintains that the Appellate Court employed an improper standard in concluding that the exclusion of Conroy as an expert witness was harmless. We disagree.

The standard for determining whether a nonconstitutional error is harmless is that "[t]he defendant must show that it is more probable than not that the errone-

crime reconstruction expert, but was, instead, required to rely on the testimony of someone with no training in crime reconstruction.

ous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Chapman*, 229 Conn. 529, 544, 643 A.2d 1213 (1994); *State* v. *Payne*, 219 Conn. 93, 106, 511 A.2d 1246 (1991); *State* v. *Belle*, 215 Conn. 257, 269, 576 A.2d 139 (1990); *State* v. *Johnson*, 214 Conn. 161, 175, 571 A.2d 79 (1990). Although we have articulated the same principle in somewhat less definite terms; see, e.g., *State* v. *Dennison*, supra, 220 Conn. 661 (whether erroneous ruling "was harmful to [the defendant] in that it probably affected the outcome of the trial"); *Swenson* v. *Sawoska*, supra, 215 Conn. 153 ("whether the erroneous ruling 'would likely affect the result' "); those alternate linguistic formulations did not change the fundamental nature of the appellate inquiry.

It is true, as the defendant points out, that the Appellate Court stated as its harmless error standard that "[t]he defendant has not shown that the result *would have been different* had the trial court permitted Conroy to testify." (Emphasis added.) *State* v. *Cavell*, supra, 34 Conn. App. 294. We agree that the Appellate Court could have worded the harmless error standard more precisely by using the "more probable than not" language. We conclude, however, that the essence of the Appellate Court's opinion accords with the proper harmless error test.

The Appellate Court sought to determine whether the substitution of Huse for Conroy was likely to have affected the outcome of the trial. Thus, although the exact language of the proper harmless error test may have been lacking, the manner of performing the test was present. The Appellate Court determined that "the testimony of Huse was equivalent to that intended by Conroy." Id. As we have indicated, Huse and Conroy offered similar credentials and similar opinions, with Huse providing even more convincing testimony on the defendant's behalf than Conroy, based on his offer, would have provided. Accordingly, we conclude that

the Appellate Court employed the proper analysis and properly concluded that the trial court's preclusion of Conroy from testifying was harmless error.

## II

We next address the defendant's claim that the Appellate Court improperly concluded that: (1) the trial court correctly permitted the state to present forensic evidence in rebuttal; and (2) even if allowing the introduction of the rebuttal evidence was proper, the trial court properly prevented the defense from presenting surrebuttal evidence. We agree with the Appellate Court's conclusions.

The following facts and procedural background are relevant to these claims of the defendant. Following the defendant's arrest, his car was impounded and the passenger seat cushion was sent to the state police forensic laboratory for testing. Guman, the criminalist who testified in the state's case-in-chief, stated that she had received, at the state laboratory, a piece of seat cushion to analyze. Initially she had tested the cushion only for trace materials. She had noticed that there was a stain on the seat cushion, but she did not examine the stain at that time.

The defendant testified as part of the defense case. On May 22, 1991, on cross-examination, the defendant denied ever having had intercourse with the victim in the car. The following day, the state resubmitted the seat cushion to the state police forensic laboratory in order to have the stain tested. The state received the laboratory report after court had recessed on the afternoon of May 28, 1991, the day before the defendant was to rest his case. The report indicated the presence of semen on the seat cushion, with spermatozoa matching the defendant's blood type. The following morning, the state immediately provided defense counsel with a copy of the forensic report. The defendant called his final

witness, Huse, and then, without requesting additional time to consider the newly received report, rested his case.

The state then offered, as rebuttal evidence, the laboratory report and the testimony of Guman, who had analyzed the stain on the seat cushion. The defendant objected, claiming that: (1) the state should have presented this evidence in its case-in-chief; and (2) allowing rebuttal evidence regarding a report that the defendant had just received constituted unfair surprise and prejudice. The state explained that the seat cushion was not initially tested for semen because "the defense of the defendant was consent and I didn't feel that it was necessary to subject an item of evidence [to tests] that would have only established sexual intercourse when the defense [was] consent. Of course after the defendant took the stand and then claimed that he never had vaginal intercourse o[r] any kind of ejaculation in the front seat of the car, it bec[ame] an important issue and I immediately sent it down to the forensic lab [to be tested for semen]."

The court asked the defendant how his case would have changed if the seat cushion had been tested the previous year and he had received the information that the stain had tested positive for semen. The defendant responded that: (1) it would have provided him with the opportunity to hire his own criminalist; and (2) it would have given him the opportunity to present other explanations for the presence of semen in the car. The trial court ruled that the rebuttal evidence was admissible.[7]

---

[7] In its ruling permitting the rebuttal evidence, the trial court stated: "Based on the forensic report, I don't know that it establishes whose semen it is or whether there were any DNA tests done, but that's subject to cross-examination, but I cannot find any bad faith. I cannot find there was an effort to ambush or sabotage the efforts of the defense. . . . The evidence clearly establishes and supports [the state's] concern . . . after listening to the defendant testify for several days that there had been no vaginal

The defendant then requested the opportunity to offer surrebuttal evidence, on the basis that he had received the forensic report so late in the trial. The trial court refused to rule at that time, stating that it preferred to defer its ruling until after cross-examination of the witness offering the rebuttal evidence, and that it would then consider any offer of proof that the defendant presented regarding surrebuttal evidence.

During the state's rebuttal, Guman testified that the stained seat cushion had tested positive for semen containing spermatozoa that were consistent with the defendant's blood type. On cross-examination, Guman also testified that 36 percent of the population had the defendant's blood type, and that she could not determine how long the stain had been present or whether other sexual activity had occurred in the car. Guman also testified that she did not know whether there had been prior owners of the car.

The defendant then renewed his request for surrebuttal. The only purpose he offered for surrebuttal was to have an independent laboratory analysis performed on the seat cushion.[8] The defendant acknowledged, how-

intercourse. It was elected then to take the seat cushion and to have it tested for stains and for spermatozoa to, number one, corroborate the victim's version and to rebut the defendant's version of what occurred. . . . I do concur that it's legitimate advocacy on the part of the state's attorney's office to secure whatever evidence is necessary to rebut the defense that was presented to the jury."

[8] Under these circumstances, with the defendant offering no evidence to counter that presented by the state during rebuttal, it is more accurate to view the defendant's request as a request for a continuance, rather than as a request to present surrebuttal evidence. Even under that view, however, the trial court's ruling denying the defendant's request was not an abuse of discretion, for many of the same reasons given below that lead us to conclude that the trial court properly denied the request for surrebuttal. Because the trial court and the Appellate Court treated the defendant's request as one for surrebuttal, however, and because that was how we certified the relevant question, we will, for purposes of this case, review the defendant's request as a request for surrebuttal.

ever, that he had not made any arrangements for such an analysis. Notably, the defendant did not then indicate, as he had in his initial request for surrebuttal, that he might be able to present alternative explanations for the presence of the semen on the car seat. Concluding that it would be disruptive to the trial, the court denied the defendant's request for surrebuttal.[9]

[9] Specifically, the trial court stated: "[O]nce you rest your case has been concluded and to suggest that there was a surprise on rebuttal while you had in your possession the supplemental forensic report as pertains to the spermatozoa stain on the front passenger seat of the car before you rested and then to argue that you were surprised on rebuttal simply is without merit and flawed. . . .

"[A] request for a surrebuttal is an extraordinary measure rarely recognized in our state. [The defense] has presented no legal authority to warrant the exercise of such an extraordinary measure. . . .

"The defense's consent was announced prior to taking testimony in this trial. The victim six weeks ago testified that vaginal intercourse occurred in the right front passenger seat of the defendant's car and that the defendant ejaculated semen during the vaginal intercourse. . . .

"Six weeks ago the defense was aware that the defendant would testify that the vaginal intercourse occurred seventy feet away from the car in the so-called leafy area. Now our Practice Book allowed the defendant the right to scientifically examine the front passenger seat. In view of the victim's testimony, such an examination should have been requested six weeks ago. . . .

"The examination of the front passenger seat by the state was as a consequence of the defendant's testimony that the vaginal intercourse occurred in the leafy area and not [in] the car. The state was always aware that the defense would be consent and was never alerted or aware that there would be a discrepancy in the testimony of the victim or the testimony of the defendant as to where the vaginal intercourse occurred. . . .

"Thereafter the state took prompt measures to examine the seat for evidence of sperm. The supplemental forensic report [was] turned over to defense counsel at the earliest possible date. In undertaking that scientific examination, the state assumed the calculated risk. Had the front passenger seat shown no traces of sperm, this evidence could have been treated exculpatorily and the defense surely would have used this state experiment to support the defendant's version and attack the victim's version of what transpired that evening. . . .

"Finally, surrebuttal is required only when there is a manifest act of injustice reaching constitutional proportions. Because the state exercised good faith, because the experiment could have fallen either way, and especially because the defense had substantial advance notice to early resolve this issue, the motion for surrebuttal is denied . . . ."

A

The defendant claims that the Appellate Court improperly concluded that the trial court had not abused its discretion when it had admitted the state's rebuttal evidence. We disagree.

"[R]ebuttal evidence is that which refutes the evidence presented by the defense . . . ." (Internal quotation marks omitted.) *State* v. *Williamson*, 206 Conn. 685, 698, 539 A.2d 561 (1988). When a defendant offers evidence in his defense, it is appropriate for the state to offer evidence to refute it, if possible. Id. The admission of rebuttal evidence is within the sound discretion of the court. *State* v. *Cavell*, supra, 34 Conn. App. 282, citing *State* v. *Canty*, 223 Conn. 703, 715–16, 613 A.2d 1287 (1992).

The fact that the state might have opted to have the seat cushion tested for traces of semen earlier in the proceedings and could have offered the test results as part of its case-in-chief does not preclude the state from offering that same evidence instead to rebut the defendant's testimony.[10] *State* v. *Lisella*, 187 Conn. 335,

[10] The dissent concludes that the laboratory report and Guman's testimony did not constitute "true rebuttal" evidence because that evidence "tend[ed] to establish affirmatively the victim's claim [and was, therefore,] properly part of the state's case-in-chief," and because "there had been ample opportunity for the state to introduce the seminal stain evidence during its case-in-chief." It is true that the state *could* have opted to have the stain tested earlier and *could* have used the test results in order to corroborate the victim's claim that sexual intercourse had occurred. Indeed, the trial court noted, that, had the state done so, the court would not have permitted the state to hold back that evidence during its case-in-chief and then present it as rebuttal evidence. The state, however, was not required affirmatively to establish the location of the intercourse, but rather the fact that intercourse had occurred and that it was nonconsensual. That obligation did not, however, contrary to the implication of the dissent, obligate the state to cause every relevant scientific test to be performed, particularly when, as in this case, the defendant had indicated to the state that the defense was consent but had not indicated that the location of the intercourse was contested. The state chose to establish the fact of sexual assault by means other than tests indicating the presence of semen on the seat cushion.

336, 445 A.2d 922 (1982). The defendant had known for at least four weeks, from the time that the victim had testified, that the *location* of the intercourse, not simply the victim's consent, was an issue in the case. The state, in contrast, was not aware until the defendant testified, on May 22, 1991, that he had never engaged in intercourse with the victim in the car, that establishing the presence of semen in the car was necessary to lend credibility to the victim's version of the facts and to discredit the defendant's version. Until that point, it was not unreasonable for the state, believing consent was the only issue, to determine that testing of the stain was unnecessary. After the state had heard the defendant's testimony, it took immediate steps to examine the seat cushion for the presence of semen.

Under the circumstances, it was within the trial court's discretion to admit the forensic report and Guman's testimony as rebuttal evidence.

B

The defendant next claims that, even if the admission of the rebuttal evidence was proper, the Appellate Court

"Rebuttal evidence is proper to meet new matters raised in the preceding presentation, to contradict prior testimony and to impeach . . . witnesses . . . ." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.3.1. The trial court acknowledged that there were two possible purposes for having the seat cushion tested: (1) to corroborate the victim's version of the facts; and (2) to rebut the defendant's version of the facts. The court admitted the laboratory report and Guman's testimony, not as evidence corroborating the victim's testimony, but rather as "evidence . . . necessary to rebut the defense that was presented to the jury." The rebuttal evidence could not have been relevant for the purpose admitted until after the defendant had testified that no sexual intercourse had occurred in the car. The state was not required to test the seat cushion for the presence of semen in anticipation of what it had no way of knowing, namely, that the defendant would testify that intercourse had occurred somewhere other than in the car. Once the defendant testified, however, the location of the intercourse became relevant; the state then diligently secured the necessary evidence and it had the *right* to present newly relevant evidence in rebuttal. C. Tait & J. LaPlante, supra, (2d Ed. 1995 Sup.) § 3.3.1. The evidence was, therefore, "true rebuttal" evidence.

improperly concluded that the trial court had acted within its discretion in denying the defendant the opportunity for surrebuttal. We disagree.

We have previously stated that "there is no constitutional right to present surrebuttal evidence. . . . The presentation of surrebuttal evidence is a matter resting squarely within the discretion of the trial court. . . . The defendant must demonstrate some compelling circumstance and the proffered evidence must be of such importance that its omission puts in doubt the achievement of a just result."[11] (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 231 Conn. 235, 253–54, 645 A.2d 999 (1994).

---

[11] The dissent suggests, without amplification, that the trial court's disallowance of surrebuttal may have been based on the court's use of an improper standard for granting surrebuttal. See footnote 2 of the dissent. It is true that the trial court remarked that "surrebuttal is required only when there is a manifest act of injustice reaching Constitutional proportions," a standard that arguably is not in accord with the standard we set forth in *State* v. *Williams*, 231 Conn. 235, 253–54, 645 A.2d 999 (1994). We determine, however, that any untoward effect that this improper statement of the standard may have had on the trial court's decision to deny surrebuttal was cured by the court's thorough analysis of the factors it considered in making its decision.

The trial court found that four factors entered into its decision to deny surrebuttal: (1) the defense was not surprised by the rebuttal evidence because it had been given a copy of the laboratory results prior to resting its case; (2) the defendant had had ample opportunity and cause to have the seat cushion tested because the defendant had known for at least six weeks that the victim claimed that intercourse had taken place in the car; (3) the defendant had potentially benefitted by the state's testing of the seat cushion because, had the state's tests been negative, the defendant would have been entitled to have used the results as exculpatory evidence; and (4) the defendant's cross-examination of Guman established that the semen on the seat cushion could not be traced to any particular person and had been there indefinitely, thus reducing the probative impact of the laboratory report.

These considerations, together with the fact that the defendant's proffer of evidence was limited to a proposal to have independent laboratory testing done, strongly suggest that the trial court would also have found that the defendant had not presented circumstances sufficiently compelling as to warrant surrebuttal. Any impropriety in the standard used by the trial court, was, therefore, harmless.

Unlike the state, which did not know until the time of the defendant's testimony that the location of intercourse was an important element in the case, the defendant had known for a minimum of four weeks, at least since the time of the victim's testimony, that the parties disagreed as to the location of the intercourse. The defendant, however, took no steps to have the stained car seat tested. Also, the defendant was in possession of the forensic report before he rested his case, but made no request at that time for a continuance in order to prepare a response.

Even after the presentation of rebuttal evidence, the defendant made no arrangements with a laboratory to have the stain tested, and made no offer of proof as to other evidence that might explain the results of the forensic test. We conclude, under these circumstances, that the defendant has neither demonstrated the requisite compelling circumstances nor proffered evidence of such importance that surrebuttal was required.[12] We

[12] The dissent builds on its flawed conclusion that the rebuttal evidence presented by the state was not truly of a rebuttal nature; see footnote 10; to conclude further that the trial court should have permitted the defendant's request for surrebuttal in order to respond to that evidence. This conclusion is equally flawed. First, it rests on the flawed premise noted above. Second, it completely ignores the fact that the defendant's request to present surrebuttal was, in a real sense, not that at all. See footnote 8. At that point, the defendant had *no* evidence to present. He had abandoned his earlier suggestion of evidence of other sexual activity in the car that might have explained the presence of semen on the seat cushion. He simply wanted more time to have tests performed that might—or might not—yield evidence that he might present. In other words, had the further tests that the defendant claimed to seek yielded results consistent with Guman's testimony, it is difficult to conceive that he would have sought to present the results in surrebuttal.

The dissent also simply disregards our case law that the introduction of surrebuttal evidence is a matter within the trial court's discretion, to be presented when the defendant has demonstrated compelling circumstances and the proffered evidence is of such importance that its omission puts in doubt the achievement of a just result. *State* v. *Williams*, supra, 231 Conn. 254. Under the circumstances, it is difficult to take seriously the dissent's position that the defendant had a right to what he sought, and that the trial court abused its discretion in denying him that opportunity.

agree, therefore, with the Appellate Court that the trial court acted within its discretion when it denied the defendant the opportunity to present surrebuttal evidence.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., and CALLAHAN, J., concurred.

KATZ, J., with whom, BERDON, J., joins, dissenting. For purposes of this dissent, I will assume that the Appellate Court properly concluded that the trial court had acted within its discretion in allowing the state to introduce rebuttal evidence. Because the seminal stain evidence, however, was not a matter of true rebuttal, I respectfully disagree with the majority opinion that the Appellate Court properly concluded that the trial court had acted within its discretion in denying the defendant the opportunity to present surrebuttal evidence.

Unlike evidence presented in the case-in-chief, "[t]he function of rebuttal evidence is to explain or rebut evidence offered by an opponent." *United States* v. *Tejada,* 956 F.2d 1256, 1266 (2d Cir.), cert. denied, 506 U.S. 841, 113 S. Ct. 124, 121 L. Ed. 2d 80 (1992). Rebuttal evidence is usually "confined to testimony which is directed at refuting the evidence given by the defendant." *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975). According to Professor Wigmore, matters of "true rebuttal" are matters that were "properly not evidential until the rebuttal" stage. 6 J. Wigmore, Evidence (Chadbourn Rev. 1976) § 1873, p. 678. A party has a *right* to present "true rebuttal" evidence, when there has been *no* prior opportunity to present it. Id.; see C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1992 Sup.) § 3.3.1 ("[a] party has a right to present rebuttal evidence . . . if the evidence was not 'evidentiary,' that

is, relevant or material, until after his adversary's case").
When a party should reasonably have included in its
case-in-chief what it claims to be rebuttal evidence,
however, the court may properly deny it that second
opportunity. *Shaham* v. *Capparelli*, 219 Conn. 133, 136–
37, 591 A.2d 1269 (1991) (*Shea, J.*, dissenting).

Because there had been ample opportunity for the
state to introduce the seminal stain evidence during its
case-in-chief, it did not qualify as true rebuttal evidence.
The state knew of the victim's complaint that the
defendant had forced her to engage in vaginal inter-
course "on the front seat of the car" as of the date
of the incident, May 4, 1990. Therefore, any evidence
tending to establish affirmatively the victim's claim was
properly part of the state's case-in-chief. Because the
state introduced four photographs of the front seat and
forensic evidence—hair and vegetative material—
seized from the front seat into evidence, it is apparent
that the state was aware of the importance of the front
seat. As part of its decision to allow the rebuttal evi-
dence, the trial court specifically commented on the
fact that the victim had testified "about six, seven weeks
ago and she testified at great length that the hair on
her head was extracted during the dragging and during
the interaction on the front seat of that car." Addition-
ally, Marybeth Guman, a criminalist at the state police
forensic laboratory, was questioned about the seat
cover stains during the state's case-in-chief. She testi-
fied that the seat cover had, as of May 14, 1991, been
submitted twice to her laboratory, that she had exam-
ined it for trace materials such as hair, and that although
there were stains on the cushion, she never examined
those stains for the presence of semen. Had the state
been more diligent in its testing of the stain, it would
have discovered the evidence that it later introduced
in rebuttal and would most certainly have offered the

results to corroborate the victim's testimony in its case-in-chief.

We traditionally grant the trial court the discretion to admit, in rebuttal, evidence that might have been properly offered in its case-in-chief. See Practice Book § 874; *State* v. *Brauneis*, 84 Conn. 222, 232–33, 79 A. 70 (1911). The unavailability of the evidence prior to May 28, 1991, may have sufficed to cause the trial court to exercise its discretion to allow the rebuttal. The late availability of this evidence, however, does not transform its essential nature into new matter. Accordingly, I would conclude that the seminal stain evidence was not truly of a rebuttal nature.[1]

Therefore, although we have stated that the trial court ordinarily enjoys broad discretion in deciding whether to allow surrebuttal evidence; *State* v. *Anderson*, 209 Conn. 622, 634–35, 553 A.2d 589 (1989); that discretion is not unlimited when new matter that was more properly presented as evidence in the case-in-chief has been presented in rebuttal. Practice Book § 874 (3) provides that if a prosecutor is permitted, in rebuttal, "to present evidence not of a rebuttal nature," then "the defendant may respond with further evidence in chief." We have stated, although not recently, that if the trial court were to allow a party to introduce evidence in rebuttal that was more properly evidence in the case-in-chief, the opposing party "would have the right to meet it." *State* v. *Buonomo*, 88 Conn. 177, 183, 90 A. 225 (1914).[2]

---

[1] The majority postulates that because the state used the seat cushion evidence to rebut the defendant's testimony and not to corroborate the victim's version of the facts, the evidence constituted "true rebuttal." See footnote 10 of the majority opinion. Although that theory allowed the trial court to find that the evidence was relevant, it does not change the fundamental nature of the evidence. The seat cushion evidence would have been relevant to corroborate the victim's version of events and was, therefore, properly evidential, that is, relevant or material, prior to the rebuttal stage. 6 J. Wigmore, supra, § 1873; C. Tait & J. LaPlante, supra, § 3.3.1.

[2] It is noteworthy that the trial court's disallowance of surrebuttal was based largely on its erroneous view of the nature of surrebuttal evidence.

A brief survey of other jurisdictions confirms the general rule that "where new matters are introduced in rebuttal . . . the witness has a *right* to surrebuttal." (Emphasis in original.) *Gregory* v. *United States*, 393 A.2d 132, 137 (D.C. 1978); accord *United States* v. *King*, 879 F.2d 137, 138 (4th Cir.), cert. denied, 493 U.S. 900, 110 S. Ct. 257, 107 L. Ed. 2d 206 (1989); *United States* v. *Sadler*, 488 F.2d 434, 435 (5th Cir.), cert. denied, 417 U.S. 931, 94 S. Ct. 2642, 41 L. Ed. 2d 234 (1974) (prejudice may occur where prosecution "injects fresh issues on which the defendant is denied the right to present evidence"); *People* v. *Martinez*, 181 Colo. 27, 28–29, 506 P.2d 744 (1973) ("[a]s a general rule, defendants should always be permitted to introduce as surrebuttal, evidence which tends to meet *new* matter introduced by the prosecution on rebuttal" [emphasis in original]); *People* v. *Terry*, 720 P.2d 125, 129 (Colo. 1986); *People* v. *Brockman*, 699 P.2d 1339, 1342 (Colo. 1985); *People* v. *Hutto*, 181 Colo. 279, 282, 509 P.2d 298 (1973); *People* v. *Cannon*, 62 Ill. App. 3d 556, 561, 378 N.E.2d 1339 (1978) ("[w]here the State is permitted to introduce new matter in rebuttal, the accused should be permitted to introduce evidence in surrebuttal to contradict or affect the credibility of the rebuttal testimony"); *People* v. *Lott*, 33 Ill. App. 3d 779, 787–88, 338 N.E.2d 434 (1975), aff'd, 66 Ill. 2d 290, 362 N.E.2d 312 (1977); *Edge* v. *State*, 393 So. 2d 1337, 1341 (Miss. 1981) (" 'rule is well settled in this state that where rebuttal evidence is introduced, surrebuttal should be allowed, particularly where to fail to do so would be prejudicial' "); *State* v. *Stambach*, 76 Wash. 2d 298, 301, 456 P.2d 362 (1969); *State* v. *Godwin*, 136 Wash. 582, 588, 240 P. 897 (1925) ("appellant, as a

*State* v. *Cavell*, 34 Conn. App. 276, 288 n.6, 641 A.2d 426 (1994). Contrary to the trial court's views, surrebuttal is not "an extraordinary measure rarely recognized in our state," and is not limited to situations "when there is a manifest act of injustice reaching Constitutional proportions." Reliance on this improper standard perhaps best explains the trial court's decision to disallow surrebuttal evidence.

matter of right, was entitled in surrebuttal to rebut" an exhibit introduced in rebuttal); *State* v. *DuPont*, 14 Wash. App. 22, 23–24, 538 P.2d 823 (1975); 23A C.J.S., Criminal Law § 1219 (c) (1989) ("where the prosecution in rebuttal is permitted to introduce new matter, accused may and should be permitted to introduce evidence in surrebuttal"); 88 C.J.S., Trial § 103 (1955) (same).

Unlike the recent cases decided by the Appellate Court where the proffered surrebuttal testimony "did not respond to anything new"; *State* v. *Anderson*, 28 Conn. App. 833, 849, 614 A.2d 438 (1992), rev'd on other grounds, 227 Conn. 518, 631 A.2d 1149 (1993); or where the proffered surrebuttal evidence would have been "cumulative in nature and designed primarily to bolster the defendant's case rather than to refute" the state's rebuttal; *State* v. *Buster*, 27 Conn. App. 263, 276, 606 A.2d 9 (1992), aff'd on other grounds, 224 Conn. 546, 620 A.2d 110 (1993); the defendant in this case demonstrated that the surrebuttal would have been his first and only opportunity to address the state's seminal stain rebuttal evidence.[3] He represented that he would do this through testimony and forensic evidence if it could be obtained. Because the rebuttal evidence "tore the heart out of his defense"; *Edge* v. *State*, supra, 393 So. 2d 1341; by disallowing surrebuttal, the trial court denied the defendant the opportunity to attempt to explain to the jury that the stain was not the result of sexual relations with the victim.[4]

---

[3] The majority's reliance on the fact that the defendant knew of the seminal stain evidence before he rested his case, and therefore that he could have testified himself regarding possible explanations for its presence, is both unfair and unrealistic. In the absence of any testimony about the stain up to that point, any defense evidence would not have been responsive. Certainly, the defendant had the right to wait to see if the state actually introduced the evidence and if, after cross-examination, there was any need to rebut it.

[4] Even before the state presented its rebuttal, the court had expressed a disinclination to permit surrebuttal. During the defendant's case, the prosecutor requested that certain physical measurements be taken of the defend-

This was a closely contested case in which, as in any "sex-related case . . . credibility was crucial." *State* v. *Ouellette*, 190 Conn. 84, 103, 459 A.2d 1005 (1983). The testimony focused on the issues of consent and location of the intercourse. In charging the jury on credibility, the trial court neatly summed up the parties' positions: "The pivotal issue of this case is whether the sexual relations . . . were consensual . . . . You will recall that [the victim] placed the oral intercourse, described under our law as fellatio, in the leafy area and the vaginal intercourse in the car. The defendant placed the act of oral sex on the passenger side of the car while he was outside the car and [the victim] in the car. And he places the act of vaginal intercourse in the leafy area. [The victim] and the defendant disagree over the issue of consensuality and the locations where these acts of sexual intercourse occur[red]."

Moreover, because the victim was the only witness to the crime, the jury's request to rehear her testimony suggests that the credibility question was a difficult one. The seminal stain evidence was of crucial impact that related to the "where" question, which in turn related to the "who's telling the truth" question. Introduction of this evidence allowed the state to argue to the jury that "when he testified," the defendant "didn't know" about the seminal stain and that he was "trapped by those stains. He was trapped by the truth. He told the story and the forensic evidence said no." Furthermore, the fact that the jury convicted the defendant of only the sexual assault count involving forcible vaginal intercourse—the act that took place in the vehicle—is additional evidence of the jury's reliance upon this unrebutted evidence.

ant, for possible use in rebuttal. The prosecutor stated that if such evidence were allowed in rebuttal, "certainly [the defendant is] entitled to [sur]rebuttal with discretion of the court." The court replied, "[w]ell, the court's not likely to grant surrebuttals."

The defendant wanted only the opportunity, either through testimony or by forensic evidence, to rebut the seminal stain evidence, which was the last evidence heard by the jury and that pertained to the crucial issue in the case. Fairness required that the defendant be given that opportunity. The trial court's ruling severely placed in doubt the achievement of a just result. *State v. Williams,* 231 Conn. 235, 254, 645 A.2d 999 (1994). Accordingly, I would conclude that the trial court abused its discretion in not allowing the defendant the opportunity to present surrebuttal evidence and that such failure was harmful.