## ALEXANDER JONES *v.* LESTER J. FORST ET AL. (14412)

O'Connell, Landau and Healey, Js.

Argued February 28—decision released May 14, 1996

*Paul N. Ngobeni,* for the appellant (plaintiff).

*Henri Alexandre*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Margaret Q. Chapple*, assistant attorney general, for the appellees (defendants).

O'CONNELL, J. The plaintiff, a former Connecticut state trooper, appeals from the judgment in favor of the defendants rendered after a trial to the court. The defendants are Lester J. Forst, former state police commissioner, and John S. Wilks, a former state trooper and investigator for the state police division of internal affairs. The plaintiff claims that the trial court improperly failed to consider his evidence of disparate treatment based on his race.[1] We affirm the judgment of the trial court.

The trial court found the following facts. On October 17, 1987, Trooper William Longo of the Connecticut state police was injured during an off-duty altercation at Bopper's Cafe in Hartford. It was claimed that Longo was assaulted and injured by Eric Matland, a bouncer at the cafe. An investigation of Matland's record was made by someone in the state police department and it was determined that his right to operate a motor vehicle was under suspension. In retaliation for the assault on Longo, the plaintiff, along with Trooper Neville Brooks, targeted Matland for an arrest for operating his motor vehicle while his license was under suspension. At the instigation of the plaintiff, Brooks established a surveillance of Bopper's Cafe on October 20, 1987. When Matland left the cafe, Brooks followed him and maintained radio contact with the plaintiff. Matland entered Interstate 84 westbound, and the plaintiff stopped Matland, intending to arrest him for operating his motor vehicle while his license was under suspen-

---

[1] A second claim, pertaining to the trial court's failure to grant a continuance, was not briefed and is therefore abandoned. *State* v. *Ramsundar*, 204 Conn. 4, 16, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

sion. He discovered that Matland's right to operate was not under suspension, however, and arrested him instead for speeding and using a radar detector. Matland filed a written complaint with the state police regarding the tactics used by the plaintiff and further denied that he was speeding or using a radar detector. In response to that complaint, the plaintiff was ordered to file a written report. The plaintiff denied, in writing, knowledge of any surveillance or any plan to single out Matland for selective law enforcement action. After the plaintiff's statement, the tape of the radio transmissions for the date of the incident was retrieved and clearly showed that the plaintiff and Brooks had participated in the activity of which Matland complained.

On November 6, 1987, the plaintiff was interviewed by Wilks as part of an internal affairs investigation of the complaint. The plaintiff was represented by the state police union president at this interview. The plaintiff denied any knowledge of any surveillance or plan to single out Matland for selective law enforcement action. On November 10, 1987, the plaintiff contacted the internal affairs office and asked if he could change his statement. When he was again interviewed, he admitted his participation in the alleged activities and admitted that he had previously lied in his written statement and at the November 6, 1987 hearings.

The plaintiff was charged with conduct unbecoming an officer—using unacceptable tactics to arrest Matland for a motor vehicle violation, falsifying written and oral reports to a superior and intentionally withholding material matter from those reports. Those charges were based on the plaintiff's lying in his written report and his subsequent lying at the internal affairs investigation interview.

Following the internal affairs investigation, Wilks submitted a report to the labor relations division of

the state police. The plaintiff was given a hearing to determine appropriate discipline, at which he was represented by the state police union. Following that hearing, the plaintiff was sent a letter by Lieutenant Colonel John Mulligan notifying him that he was discharged from the state police. The plaintiff grieved his discharge pursuant to the union contract, and the discharge was upheld by an arbitrator. The plaintiff did not appeal the arbitrator's decision.

The plaintiff claims that he was discharged because of his race in violation of the due process and equal protection clauses of the fourteenth amendment to the constitution of the United States,[2] 42 U.S.C. § 1983,[3] and article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments.[4] The trial court found that the plaintiff "failed to provide *any* evidence that would indicate that he was discharged because of his race" (emphasis added) and that "the plaintiff was discharged for two reasons: (a) Conduct unbecoming an officer, and (b) falsifying written and oral reports to a superior officer and intentionally withholding material matter from a written and

[2] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] Title 42 of the United States Code, § 1983, provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

[4] Article first, § 20, of the Connecticut constitution, as amended by article twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex, or physical or mental disability."

verbal report made to the [state police] department or to a superior."

The plaintiff complains that the trial court did not analyze his case under the principles of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under *McDonnell Douglas Corp.*, the complainant bears the initial burden of establishing a prima facie case of race discrimination by a preponderance of the evidence. Id., 802. In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a nondiscriminatory basis for the action taken against the plaintiff. Id. However, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities*, 201 Conn. 350, 363, 514 A.2d 749 (1986).

The plaintiff testified that white and black troopers who lied did not receive similar disciplinary action, but was unable to substantiate this broad statement with the names of any such troopers or the underlying facts of the charges against them. Although the plaintiff failed to support his allegation, the defendants presented evidence that the plaintiff was discharged for reasons other than race. For example, Mulligan, the executive officer of the state police department, testified that *any* trooper who lied to internal affairs was terminated in accordance with department policy. The defendants also offered uncontroverted evidence that the plaintiff was discharged because of his use of improper methods in securing Matland's arrest.

Furthermore, both at the conclusion of the plaintiff's case, and at the end of the evidence, the plaintiff's trial counsel[5] conceded[6] that he had failed to establish a prima facie case of race discrimination. Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. *Kanopka* v. *Kanopka*, 113 Conn. 30, 38–39, 154 A. 144 (1931); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 6.5. In this case, the plaintiff's judicial admissions alone constitute a sufficient basis to sustain the trial court's judgment.

It is readily apparent in the present case that the plaintiff did not sustain his initial burden of establishing a prima facie case of race discrimination so as to shift the burden of providing a nondiscriminatory reason for the plaintiff's discharge to the defendants. Notwithstanding the plaintiff's failure to establish a prima facie case, the defendants nonetheless established nondiscriminatory reasons for the plaintiff's termination.

The plaintiff's claim is an attack on the factual findings of the trial court. Our function, however, is limited solely to the determination of whether the decision of the trial court is clearly erroneous. Practice Book § 4061; *Ernst Steel Corp.* v. *Reliance Ins. Co.*, 13 Conn. App. 253, 257, 536 A.2d 969 (1988). Our review of the record discloses abundant support for the trial court's finding that the plaintiff had not sustained his burden of establishing a case of race discrimination.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Trial counsel was not appellate counsel.

[6] Trial counsel added that the plaintiff could not show race discrimination unless the trial court admitted a report being prepared in a federal case. Because the report did not pertain to this plaintiff, the trial court ruled that it was not relevant. That ruling became unreviewable when the second claim in this case was abandoned.