## STATE OF CONNECTICUT *v.* HOA VAN NGUYEN
### (AC 17107)

Lavery, Landau and Sullivan, Js.

Argued November 10, 1998—officially released March 2, 1999

*James E. Swaine,* for the appellant (defendant).

*Ellen A. Jawitz,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Edward R. Narus,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Hoa Van Nguyen, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that the trial court improperly (1) found a violation of its sequestration order and consequently excluded a defense witness, (2) denied the defendant's motion for an independent medical examination of the victim and (3) failed to instruct the jury on the issue of the credibility of a child witness as requested by the defense. We affirm the judgment of the trial court.

A jury reasonably could have found the following facts. The defendant, his wife and the victim's parents jointly purchased and lived together in a single-family home in West Hartford. In 1994, the five year old victim, Q, and her brother went to play in the basement of the house. The defendant was already in the basement and asked the victim's brother to go back upstairs and to lock the basement door behind him.

The defendant then removed Q's shorts and underpants and unfastened his trousers. He forced Q to stimulate his penis manually and then inserted his penis into her vagina. Afterwards, the defendant told Q that he would buy her a toy if she kept secret what had happened. Q went upstairs and told her mother what had occurred.

The West Hartford police arrested the defendant and he was subsequently convicted.

I

The defendant first claims that the trial court improperly determined that the defendant's attorney had violated the court's sequestration order. We disagree.

The following additional facts are necessary to our determination. The trial court granted the state's motion for a sequestration order pursuant to Practice Book § 876, now § 42-36.[1] During the defendant's case-in-chief, the defendant's wife testified that Q's parents were physically abusive when disciplining Q and her brother, that they had fabricated the rape charge to gain control of the jointly owned house and that Q had cooperated with her parents out of fear of physical punishment. Immediately following that testimony, the

[1] Practice Book § 876, now § 42-36, provides: "The judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which such witness is not testifying."

prosecutor overheard part of a closed door discussion in a room outside of the courtroom between the defendant's attorney, the defendant's wife and George Thibodeau, the next defense witness and a friend of the defendant. The prosecutor immediately brought this to the attention of the trial court, claiming that the discussion concerned the testimony just given by the defendant's wife and that it violated the court's sequestration order. The defendant's attorney stated: "I may have asked [the defendant's wife] a question about what she said when she testified, yes. She was upset, and she was inquiring about [whether she had said] the right thing, that sort of thing, but, you know, I responded to that mainly because my thinking was that, well, this witness has testified. You know, it's not really an issue what she says in front of anybody not really thinking about Thibodeau, who was in the corner basically reading the paper." On the basis of these statements, the court concluded that there had been a violation of its order and barred Thibodeau's testimony. The next day the defendant moved the trial court to reconsider its decision. The court declined.

A

The defendant first claims that the trial court improperly found a violation of the sequestration order without first conducting an evidentiary hearing. We do not agree.

"An inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted." *State* v. *Scott*, 16 Conn. App. 172, 182, 547 A.2d 77, cert. denied, 209 Conn. 821, 551 A.2d 758 (1988). That inquiry, however, need not take the form of a formalized evidentiary hearing. See *State* v. *Brown*, 235 Conn. 502, 526, 668 A.2d 1288 (1995) (en banc) (trial court must conduct some type of inquiry into allegations of jury misconduct, but

form and scope rest within court's sound discretion); *State* v. *Haye*, 214 Conn. 476, 482–83, 572 A.2d 974 (1990) (representations of counsel may suffice to support good cause finding for continuance of statutory probable cause hearing). There are instances "in which a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record." *State* v. *Brown*, supra, 528. "To impose a requirement of a factual showing in every case to support representations of counsel concerning such matters would impugn the veracity of counsel and impose a staggering burden of time and effort on our already overburdened court system. Evidentiary support of counsel's representations may be found necessary by the court only under certain contested circumstances; see *State* v. *Aillon*, 202 Conn. 385, 521 A.2d 555 (1987); or where otherwise required by statute, our rules of practice, or the rules of evidence." *State* v. *Haye*, supra, 482–83.

In this case, defense counsel represented to the court that he and the defendant's wife had discussed elements of her testimony in Thibodeau's presence. If defense counsel's representations had been at odds with the state's assertions or merely self-serving, we would agree that a more searching inquiry would be required but that is not the case here.[2] The court was justified in relying upon the statements of the defense attorney in making its decision.

Indeed, defense counsel's statement that "[he] may have asked [the defendant's wife] a question about what she said when she testified [while] Thibodeau . . . was in the corner" constitutes a judicial admission. "Judicial admissions are voluntary and knowing concessions of

---

[2] Although the dissent cites additional statements in the transcript, those statements taken as a whole do not contradict the admission made by defense counsel.

fact by a party or a party's attorney occurring during judicial proceedings." *Jones* v. *Forst*, 41 Conn. App. 341, 346, 675 A.2d 922 (1996). A judicial admission "is, in truth, a substitute for evidence, in that it does away with the need for evidence." (Internal quotation marks omitted.) *State* v. *Jones*, 50 Conn. App. 338, 352, 718 A.2d 470 (1998). Furthermore, defense counsel's later statements in no way contradict his admissions that he, the defendant's wife and Thibodeau were present in the anteroom and that he and the defendant's wife discussed the testimony she had just given. The trial court properly relied on his judicial admission.

Moreover, the defendant failed to request an evidentiary hearing at trial. He cannot demand a full evidentiary hearing for the first time on appeal. See *State* v. *Brown*, supra, 235 Conn. 530; *Spicer* v. *Spicer*, 33 Conn. App. 152, 161, 634 A.2d 902 (1993), cert. denied, 228 Conn. 920, 636 A.2d 850 (1994).

We conclude that the trial court acted properly. Even assuming that the trial court had made an improper finding, however, we conclude that Thibodeau's testimony was cumulative, as we will discuss in part I C of this opinion.

B

The defendant next argues that the trial court could not find a violation of its sequestration order because any communication that did take place occurred outside of the courtroom. We find no merit to this argument.

"The primary purpose of a sequestration order is to ensure that the defendant receives a fair trial by preventing witnesses from shaping their testimony to corroborate falsely the testimony of others. *State* v. *Pikul*, 150 Conn. 195, 200, 187 A.2d 442 (1962). *State* v. *Crumble*, 24 Conn. App. 57, 61, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991)." (Internal

quotation marks omitted.) *State* v. *Sherman*, 38 Conn. App. 371, 413–14, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). Although the language of Practice Book § 876 may seem merely to bar "a sequestered witness from being in the courtroom when he is not testifying"; (internal quotation marks omitted) *State* v. *Falby*, 187 Conn. 6, 27, 444 A.2d 213 (1982); we do not follow so rigid an interpretation. Indeed, such an interpretation "would vitiate any sequestration order by exalting form above substance." Id.

Here, defense counsel admitted having discussed the testimony of the defendant's wife in Thibodeau's presence. The defendant had joined the state's motion for a sequestration order pursuant to Practice Book § 876, now § 42-36. Moreover, the defendant was put on notice as to the scope of the order by the court's previous questions to Elizabeth Foran, Q's guardian ad litem. In fact, when the issue of Foran's presence in the courtroom arose, the defendant urged a broad construction of the sequestration order and indicated his understanding that the order was not limited to barring prospective witnesses from the courtroom.[3] Therefore, we conclude that the court had reasonable grounds for finding a violation of its order.

## C

Finally, the defendant argues that, even if the court properly found a violation of its order, the sanction

---

[3] "[Defense Counsel]: My concern, Your Honor, is also with the mother in this case. My understanding is that this individual here in the courtroom [Ms. Foran] has also posed as a guardian or consulted with her in some way. I know that she was in the courtroom when she testified last, and I would ask that she be instructed that her conversations with the mother of the alleged victim should also be—should not occur.

"Ms. Foran: Your Honor, I'm not discussing this case with any of the family members, what happens in the courtroom.

"The Court: Okay. All right, and you're not going to discuss it with anybody who is a future witness.

"Ms. Foran: That's right, Your Honor."

imposed by the court violated his constitutional right to present a defense. Alternatively, he argues that, if the exclusion of Thibodeau's testimony is not of constitutional magnitude, the trial court nonetheless abused its discretion. We disagree with both of the defendant's assertions.

"The remedy for such a violation [of a sequestration order] rests in the trial court's discretion, guided by a primary concern for the fairness of the trial, not the culpability of the [offender]." (Internal quotation marks omitted.) *State* v. *Sherman*, supra, 38 Conn. App. 414. "We acknowledge, however, that, under particular circumstances, the unjustified exclusion of a witness' testimony can amount to a deprivation of the defendant's right to present a defense. See, e.g., *Braswell* v. *Wainwright*, 463 F.2d 1148, 1155–56 (5th Cir. 1972) (holding that trial court's discretionary exclusion of sole corroborating witness' testimony denied defendant fundamental constitutional right). If an impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. *State* v. *Colton*, 227 Conn. 231, 253–54, 630 A.2d 577 (1993) [on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995)]." *State* v. *Cavell*, 235 Conn. 711, 720, 670 A.2d 261 (1996).

The exclusion of Thibodeau's testimony did not prevent the defendant from effectively presenting his defense. Thibodeau would have testified to the physical punishments administered to Q and her brother by their parents, a fact already testified to by the defendant's wife, by Q and by her brother. The defendant was still able to maintain his theory that Q's parents concocted the sexual assault allegations and Q acquiesced out of fear of physical retribution. In fact, the defendant argued precisely that in his closing argument. We are unpersuaded that the trial court's decision violated any of the defendant's constitutional protections.

"The standard for determining whether a nonconstitutional error is harmless is that [t]he defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Cavell,* supra, 235 Conn. 721–22. Even assuming arguendo that a nonconstitutional error exists, we are not convinced that the defendant was harmed.

The defendant was in no way foreclosed from arguing his theory that Q acquiesced in her parents' scheme out of fear of physical punishment. The defendant argues that because the witness was his wife, her testimony about the physical punishments suffered by Q and her brother would have been more credible to the jury if corroborated by someone outside of the family, such as Thibodeau. Although Thibodeau was barred from corroborating the testimony of the defendant's wife about the physical punishments suffered by Q, that testimony was corroborated by both Q and her brother. The defendant could not find witnesses less partial to him than the victim and her brother.

We conclude that the trial court properly found a violation of its sequestration order and fashioned an appropriate remedy.

II

The defendant next claims that the trial court abused its discretion in denying the defendant's motion for a physical examination of the victim. We disagree.

The following additional facts are necessary to our determination of this issue. An initial physical examination by Angela Quattrocelli, a pediatric resident at Hartford Hospital, was inconclusive as to sexual assault. A referral examination conducted the day after Quattrocelli's examination by Debra Brown, director of the child abuse program at Hartford Hospital, concluded

that there was a tear of the hymen at the seven o'clock position. An examination five months later by Frederick Rau, a pediatric gynecologist, concluded that there was a tear of the hymen between the five and six o'clock positions. At trial, Rau discounted the discrepancy with Brown's finding, noting that both findings are within the same range and not medically inconsistent for the gynecological examination of a child. The defendant maintains that a further examination would have shown the existence of a second tear of the victim's hymen, which had occurred at a time when the defendant was not in contact with her.

We review the denial of a motion for a physical examination of a sexual assault victim under an abuse of discretion standard. *State* v. *Esposito*, 122 Conn. 604, 607–608, 191 A. 341 (1937). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Hoth*, 50 Conn. App. 77, 87–88, 718 A.2d 28, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998).

The defendant must "establish a nexus between the proffered evidence . . . and a material fact or issue involved in the case." *State* v. *Hickey*, 23 Conn. App. 712, 714, 584 A.2d 473, cert. denied, 217 Conn. 809, 585 A.2d 1233, cert. denied, 501 U.S. 1252, 111 S. Ct. 2894, 115 L. Ed. 2d 1058 (1991). This court has never suggested, however, that that is the only criterion for determining whether an order for a physical examination will issue. In a majority of jurisdictions, courts balance the well-being of the victim against the need of the defendant before ordering an independent physical examination. See, e.g., *Lanton* v. *State*, 456 So. 2d 873, 874 (Ala. Crim. App. 1984) (physical examination of child victim should be ordered only in situations of

" 'extreme necessity' "), cert. denied, 471 U.S 1095, 105 S. Ct. 2314, 85 L. Ed. 2d 834 (1985); *State* v. *Garrett*, 384 N.W.2d 617, 619 (Minn. App. 1986) (defendant must show "compelling need"); *State* v. *D.R.H.*, 127 N.J. 249, 265, 604 A.2d 89 (1992) (defendant's need must "clearly outweigh" potential harm to victim); *State* v. *Ramos*, 553 A.2d 1059, 1062 (R.I. 1989) (trial court has discretion to order physical exam only in "most compelling of circumstances").

The trial court in this case acted neither unreasonably nor arbitrarily in exercising its judgment. In cases involving child victims of sexual assault, courts face the difficult task of balancing the protection of the victim against the need of the defendant to present a defense. The defendant was able to cross-examine the physicians effectively. The physicians found only one tear of the hymen, and the only discrepancy was the position of the tear. Rau explained why his report was not medically inconsistent with Brown's findings and noted that children tend to move during gynecological examinations, so that seven o'clock and five or six o'clock are essentially in the same range.

On the basis of our reading of the record, we cannot find that the trial court abused its discretion in this matter.

### III

The defendant finally claims that the trial court abused its discretion by failing to instruct the jury on the credibility of child witnesses.[4] The defendant asserts

---

[1] The defendant requested the following charge: "When considering the credibility of [a] child witness, you should remember that 'in certain respects a young child is more apt to err than an older person; he or she is apt to be more amenable to any influence or suggestion which may be made to them by older persons; their imagination also often misleads them; its products may take on all the semblances of actual fact and they will relate them as such; the sanctity of the oath and the solemnity of legal proceedings may appeal to them less than to an adult.' "

that such a charge was necessary because of the age of the witness at the time of the incident and at the time of the trial and because of the lack of corroborating evidence.[5] We disagree.

"The prevailing view . . . is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and, if so, the nature of that instruction." (Internal quotation marks omitted.) *State* v. *Osborn*, 41 Conn. App. 287, 290, 676 A.2d 399 (1996).

We are not persuaded that the trial court's refusal to give the requested charge was unreasonable or an abuse of discretion. Contrary to the defendant's suggestion, the witness' age at the time of the incident and the trial does not undermine the reasonableness of the trial court's decision. Rather, it is precisely "the difficulty in fixing an age when such an instruction would be necessary" that requires the discretion of the court. See *State* v. *Angell*, 237 Conn. 321, 330, 677 A.2d 912 (1996); *State* v. *James*, 211 Conn. 555, 568, 560 A.2d 426 (1989).[6]

During questioning by the court, Q demonstrated an understanding of the importance of being truthful and an ability to recall events several years in the past. On direct examination, she was cogent and coherent. We find nothing to suggest that the trial court's refusal to charge on child credibility was unreasonable.

---

[5] Q was five years old at the time of the incident and eight years old at the time of the trial.

[6] In *State* v. *James*, supra, 211 Conn. 569 n.7, the court cites one study as finding: "[I]f prompted, children as young as 3 years of age can recall past events quite well, although they will have difficulty under 10 years of age dating the events or attributing the appropriate motivation and intention to other people. Despite conventional wisdom, there is no evidence that children are more prone to lie than adults, and no evidence that they are more prone to confabulate or fabricate complex allegations." (Internal quotation marks omitted.)

The defendant also alleges a lack of corroborative evidence, which required a special charge on the credibility of a child witness in this case. The presence or absence of corroborative evidence is not essential to a trial court's decision on whether to give such a charge. Our Supreme Court has indicated that corroborative evidence is not required when a court does not give a charge on the credibility of a child witness. *State* v. *Angell*, supra, 237 Conn. 331 n.11.

Because the trial court acted well within its discretion, we reject the defendant's claim.

The judgment is affirmed.

In this opinion LANDAU, J., concurred.

LAVERY, J., concurring in part and dissenting in part. Although I agree with parts II and III of the majority opinion, I respectfully dissent from part I.

I

The majority concludes that it was unnecessary for the trial court to conduct an evidentiary hearing before it determined that defense counsel had violated the sequestration order. I respectfully disagree.

Although this court has stated that a trial court must conduct an inquiry into the facts and circumstances of each case to ascertain whether a sequestration order has been violated; *State* v. *Crumble*, 24 Conn. App. 57, 61, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991); *State* v. *Scott*, 16 Conn. App. 172, 182, 547 A.2d 77, cert. denied, 209 Conn. 821, 551 A.2d 758 (1988); neither this court nor our Supreme Court has provided trial courts with additional guidance concerning the form and scope of that inquiry. In resolving this issue, I find instructive our Supreme Court's decision in *State* v. *Brown*, 235 Conn. 502, 526–32, 668 A.2d 1288 (1995) (en banc), in which the court explained the form of

inquiry that a trial court should conduct when faced with an allegation of jury misconduct.

In *Brown*, our Supreme Court held that when faced with an allegation of jury misconduct, a trial court must conduct a preliminary inquiry to determine whether the allegations require further investigation or some other response. Id., 525–26. The "form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." Id., 526.

In this case, the trial court conducted a preliminary inquiry of counsel. The majority concludes that it was unnecessary for the trial court to conduct an evidentiary hearing because the representations of counsel were sufficient to support the trial court's finding that defense counsel had violated the sequestration order. In many instances, the representations of counsel, without more, will constitute a sufficient basis for a trial court's decision. "To impose a requirement of a factual showing in every case to support representations of counsel concerning such matters would impugn the veracity of counsel and impose a staggering burden of time and effort on our already overburdened court system." *State* v. *Haye*, 214 Conn. 476, 482–83, 572 A.2d 974 (1990).

Although a trial court need not conduct an evidentiary hearing whenever it is confronted with a potential violation of a sequestration order, in the present case, the trial court should have conducted a hearing because defense counsel specifically challenged the prosecutor's unsupported allegation that there had been such a violation. "Evidentiary support of counsel's representations may be found necessary by the court . . .

under certain *contested circumstances*; see *State* v. *Aillon*, 202 Conn. 385, 521 A.2d 555 (1987) . . . ." (Emphasis added.) *State* v. *Haye*, supra, 214 Conn. 483.

In *Haye*, the defendant claimed that an evidentiary hearing was necessary because the representations of counsel, absent the presentation of evidence, could not support a finding of good cause to continue a probable cause hearing. Id., 482. Although our Supreme Court denied the defendant's claim, it observed that it would have decided otherwise if, at trial, the defendant had specifically challenged the accuracy of the state's representations. Id. Additionally, the court observed: "In *Aillon*, we [determined] that unsupported representations of defense counsel [were] insufficient to establish either the unavailability of an expert witness or the defendant's need for a continuance to acquire a substitute witness. We did not say that representations of counsel can never be sufficient, but held that under the circumstances presented in *Aillon*, the representations simply were inadequate. In that case the unsupported representations of counsel were insufficient because the state at trial *challenged* those representations and put the defendant to his burden of proof." (Emphasis in original.) Id., 482 n.7.

In the present case, the record demonstrates that defense counsel specifically contested the prosecutor's unsupported representation that there had been a violation of the sequestration order. On January 23, 1997, the prosecutor claimed that defense counsel had violated the sequestration order by questioning the defendant's wife in George Thibodeau's presence about why she had failed to offer certain testimony and then suggesting that Thibodeau could testify as to these matters. Although defense counsel admitted that he "may have asked [the defendant's wife] a question about what she said when she testified," he claimed, "[Thibodeau] was in no way tainted . . . any comment that was made to

[the defendant's wife] where I may have questioned something that she said was inconsequential and in no way goes to the substance of what we are talking about here which has to do with [Thibodeau's] relationship with the family and what he observed of the conduct of the parents of the alleged victim."

After the trial court concluded that there had been a violation of the order, defense counsel responded: "I want to be clear about one thing, and that is that the substance of the testimony [of the defendant's wife has] not gone in front of Mr. Thibodeau . . . and by no stretch of the imagination am I conceding or saying in any way here that I discussed in any important way what her testimony was to Mr. Thibodeau and how he should respond to that." Additionally, defense counsel questioned the adequacy of the basis for the trial court's determination.[1] On January 24, 1997, defense counsel renewed his challenge.

Defense counsel contested the prosecutor's representation that there had been a violation of the sequestration order. On the basis of our Supreme Court's reasoning in *Haye* and *Aillon*, which I find persuasive in this context, I would hold that the trial court's failure to conduct an evidentiary hearing constituted an abuse of discretion.

## II

The majority next concludes that the scope of the sequestration order was not limited to communications that took place inside the courtroom. I respectfully disagree.

---

[1] In a colloquy with the trial court, defense counsel stated: "So, you know . . . what you have here, Your Honor, is a statement being made [by the prosecutor], I feel, and a decision [by the court] based solely upon the way— you have [the prosecutor] who says that he did not hear 99 percent of what occurred in that room, and I am saying that the substance of [the] testimony [of the defendant's wife] was not discussed in front of . . . Thibodeau."

Although a sequestration order may impose a broader prohibition than that provided by Practice Book § 42-36, formerly § 876; see *State* v. *Crumble*, supra, 24 Conn. App. 61; a sequestration order granted pursuant to § 42-36 does no more than prohibit a sequestered witness from being in the courtroom when he is not testifying. See Practice Book § 42-36; see also *State* v. *Williams*, 169 Conn. 322, 331, 363 A.2d 72 (1975) (interpreting text of General Statutes § 54-85a, which is the same as Practice Book § 42-36). The state moved for a sequestration order pursuant to § 876 and, therefore, in its initial form, the sequestration order prohibited witnesses only from being in the courtroom when they were not testifying.

Later in the proceeding, however, the trial court instructed Elizabeth Foran, Q's guardian ad litem, that she could not discuss what she had observed in the courtroom with any of the state's witnesses. If the "enforcement [of sequestration orders] is to work justice and not injustice, care must be taken by the trial courts and by counsel to insure that those orders are plainly announced and that their effect is made clear to all witnesses." *Jury* v. *Commonwealth*, 10 Va. App. 718, 722, 395 S.E.2d 213 (1990). It is not clear in the record whether the trial court's informal modification of the sequestration order applied only to Foran or to all prospective witnesses or to every witness, including those who had already testified. I would resolve this ambiguity in favor of the defendant and limit the scope of the sequestration order to the explicit terms of § 876.

III

The majority also concludes that the trial court's exclusion of Thibodeau's testimony did not violate the defendant's constitutional right to present a defense. I respectfully disagree.

" 'The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts . . . . Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.' *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)." *State* v. *McPhail*, 213 Conn. 161, 178, 567 A.2d 812 (1989). "It is a right which derives not only from the general fairness requirements of the due process clause of the fourteenth amendment but also, and more directly, from the compulsory process clause of the sixth amendment." *Rosario* v. *Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988); see *State* v. *Carter*, 228 Conn. 412, 422, 636 A.2d 821 (1994).

"When defense evidence is excluded, such evidence may give rise to a claim of denial of the right to present a defense. *Chambers* v. *Mississippi*, 410 U.S. 284, 289–90, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)." *State* v. *Bova*, 240 Conn. 210, 236, 690 A.2d 1370 (1997); *State* v. *Cavell*, 235 Conn. 711, 720, 670 A.2d 261 (1996). "Whether a trial court's erroneous restriction of a defendant's or defense witness's testimony in a criminal trial deprives a defendant of his due process right to present a defense is a question that must be resolved on a case by case basis." (Internal quotation marks omitted.) *State* v. *Barletta*, 238 Conn. 313, 322, 680 A.2d 1284 (1996).

In *Holder* v. *United States*, 150 U.S. 91, 92, 14 S. Ct. 10, 37 L. Ed. 1010 (1893), the Supreme Court held that a defense witness' violation of a sequestration order, without more, did not warrant his exclusion. "The exclusion of a witness is a strongly disfavored sanction because of the severe consequences it holds for the

defendant. In particular, the [United States] Supreme Court has long recognized that [t]he right to offer the testimony of witnesses . . . is in plain terms the right to present a defense . . . . Because of this constitutionally based right of the defendant to present evidence in his favor, disqualification of defense witnesses is too harsh a penalty to impose in the absence of misbehavior by the defendant or his counsel." (Citation omitted; internal quotations marks omitted.) *United States* v. *Hobbs*, 31 F.3d 918, 922 (9th Cir. 1994).[2] Accordingly, the defendant's claim should be reviewed in light of the federal judiciary's reluctance to impose this harsh sanction.

At trial, the defendant claimed that a feud had developed between the victim's parents and him over the use and ownership of the home, which the defendant and his wife shared with the victim and her family. Additionally, he claimed that the victim's parents concocted the sexual assault allegations and Q acquiesced out of fear of physical retribution by her parents. The defendant's wife testified that her husband's relationship with the victim's parents had deteriorated over a

---

[2] Several federal circuits have expressed reluctance to impose this harsh sanction when confronted with a violation of a sequestration order. See *United States* v. *Cropp*, 127 F.3d 354, 363 (4th Cir. 1997), cert. denied, 522 U.S. 1098, 118 S. Ct. 898, 139 L. Ed. 2d 883 (1998) ("[b]ecause exclusion of a defense witness impinges upon the right to present a defense, we are quite hesitant to endorse the use of such an extreme remedy"); *United States* v. *Rugiero*, 20 F.3d 1387, 1394 (6th Cir.), cert. denied, 513 U.S. 878, 115 S. Ct. 208, 130 L. Ed. 2d 137 (1994) (" '[t]he controlling principle in this Circuit is that violation of an order directing that witnesses be separated does not automatically bar a witness' testimony' "); *Government of the Virgin Islands* v. *Edinborough*, 625 F.2d 472, 474 (3d Cir. 1980) ("even when there has been a violation of a sequestration order, the witness is not necessarily disqualified"); *United States* v. *Bobo*, 586 F.2d 355, 366 (5th Cir. 1978), cert. denied sub nom. *Rowan* v. *United States*, 440 U.S. 976, 99 S. Ct. 1546, 59 L. Ed. 2d 795 (1979) (witness' failure to comply with sequestration order would not render his testimony inadmissible absent showing of prejudice); *United States* v. *Smith*, 578 F.2d 1227, 1235 (8th Cir. 1978) (witness usually disqualified only under particular or special circumstances).

dispute concerning the use and ownership of the home. She also testified about the severe discipline administered to Q and her brother by their parents.

Defense counsel represented that Thibodeau would have corroborated the testimony of the defendant's wife concerning the defendant's relationship with the victim's parents and the disciplinary practices of the victim's parents.[3] Additional testimony concerning the same subject matter is not per se cumulative or unimportant. See *State* v. *Grant*, 221 Conn. 93, 106, 602 A.2d 581 (1992) (testimony of several witnesses in support of alibi defense cannot be characterized as unimportant or cumulative); *State* v. *Ruiz*, 202 Conn. 316, 325, 521 A.2d 1025 (1987) (testimony of additional witness on significant disputed issue cannot be characterized as cumulative); see also *Kobos* v. *Everts*, 768 P.2d 534, 545–46 (Wyo. 1989); 2 D. Louisell & C. Mueller, Federal Evidence (1985) § 128, pp. 74–75; 75 Am. Jur. 2d, Trial § 340, pp. 547–48. "Not all evidence which is entirely duplicative is therefore cumulative and excludable. Evidence may vary in degree of persuasiveness, and when an item of proof which is offered on a point is very different in character or persuasive impact from an item of proof previously received, the former cannot be considered merely 'cumulative' of the latter. . . . In short, the discretion of the trial judge to exclude cumulative evidence must be exercised in a discriminating fashion, and with wisdom, particularly where the evidence in question goes to issues of central importance in the case." *Kobos* v. *Everts*, supra, 546, quoting 2 D. Louisell & C. Mueller, supra, pp. 74–75.

---

[3] "The Court: Let me ask you something. What was . . . the nature of Mr. Thibodeau's testimony?"

\* \* \*

"[Defense Counsel]: Oh, what is he going to testify to? Basically the only issue that I can see is the issue of disciplining the children, whether the parents—and what the relationship of the parents was to the child and this couple's relationship to them. . . ."

The importance of Thibodeau's testimony cannot be underestimated. Thibodeau's corroborative testimony was important to the defendant's case because the jury may have accorded less weight to the testimony of the defendant's wife because of her relationship to the defendant. Additionally, although Q and her brother testified about their parents' disciplinary practices, neither testified that their parents were involved in a dispute with the defendant over the home. As a result, the trial court's sanction deprived the defendant of an opportunity to offer important corroborative testimony in support of his claim that the victim's sexual assault allegations ultimately stemmed from a dispute between the defendant and the victim's parents concerning the use and ownership of the home.

"If the error is of constitutional magnitude, then the burden is on the state to prove that this error was harmless beyond a reasonable doubt." *State* v. *Flanders*, 214 Conn. 493, 500, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990). In light of the importance to the defendant of Thibodeau's testimony, I do not believe the state has met its burden of showing harmlessness beyond a reasonable doubt. The trial court's exclusion of Thibodeau's testimony impaired the defendant's ability to present a proper defense.

Even if there was a violation of the sequestration order, the foregoing conclusion is particularly true in light of the numerous lesser sanctions that the trial court could have utilized to remedy this violation. For example, the trial court could have allowed Thibodeau to testify and permitted the state to cross-examine him concerning the extent to which he was influenced by defense counsel's discussion of the testimony of the defendant's wife. See *State* v. *Falby*, 187 Conn. 6, 26–27, 444 A.2d 213 (1982); *United States* v. *Blasco*, 702 F.2d 1315, 1327 (11th Cir.), cert. denied sub nom. *Galvan* v.

*United States*, 464 U.S. 914, 104 S. Ct. 275, 78 L. Ed. 2d 256 (1983). Additionally, the trial court could have instructed the jury that, in weighing Thibodeau's testimony, it should consider that defense counsel had discussed the testimony of the defendant's wife in Thibodeau's presence. See *State* v. *Falby*, supra, 26–27; *Dutton* v. *Brown*, 812 F.2d 593, 601 (10th Cir.), cert. denied, 484 U.S. 836, 108 S. Ct. 116, 98 L. Ed. 2d 74 (1987). Any of these alternatives was preferable to exclusion of the defendant's witness.

For these reasons, I respectfully dissent and would reverse the judgment and remand the case to the trial court for a new trial.

