LASALLE NATIONAL BANK *v.* FRESHFIELD
MEADOWS, LLC, ET AL.
(AC 21690)
(AC 21691)

Dranginis, Flynn and Daly, Js.

---

Argued January 23—officially released May 21, 2002

*Joseph A. Kubic*, with whom, on the brief, was *James M. Nugent*, for the appellant (named defendant).

*David F. Borrino*, for the appellee (plaintiff).

DALY, J. In this consolidated appeal, the defendant Freshfield Meadows, LLC (Freshfield),[1] appeals from the judgments of the trial court ordering foreclosure by sale of two properties. On appeal, the defendant claims that the court should not have granted the plaintiff's motions for summary judgment as to the defendants' liability because it improperly (1) relied on transcript testimony as a judicial admission, (2) considered an uncertified transcript, (3) relied on an affidavit that had been withdrawn, (4) failed to consider the special defenses of breach of the implied covenant of good faith and fair dealing, unclean hands, breach of the common-law duty of good faith and fair dealing, unconscionability, equitable estoppel, and (5) considered the defendant's failure to answer as a ground for granting the motion. We affirm the judgments of the trial court.

The pleadings, affidavits and other documentary information presented to the court reveal the following facts. On September 29, 1998, to secure two promissory notes, the defendant mortgaged to Alliance Funding, a division of Superior Bank, FSB (Alliance), properties at 3315-3327 Main Street, now known as 3333 Main Street, and 3060 Main Street, both in Stratford. Nicholas E. Owen II, the owner of Freshfield, guaranteed payment of the notes, entering into guarantee agreements in favor of Alliance. The defendant granted, transferred and assigned to Alliance its right and title to and interest in all of the rents generated from 3333 Main Street.

Under the terms of the mortgages and their accompanying notes, the defendant promised to pay to Alliance the principal sums of $340,000 and $240,000. Payment

[1] The other defendants, Nicholas E. Owen II, Joseph Siciliano, Sandra M. McDonough and Beazley Stratford, also known as Beazley Company Realtors, are not involved in this appeal. We therefore refer in this opinion to Freshfield as the defendant.

was to begin on November 1, 1998. Failure to make a required payment within fifteen days after it was due would result in a default, giving Alliance the right to "accelerate the indebtedness to become immediately due and payable and to sue on the Note."

In a pooling and servicing agreement dated November 1, 1998, by an assignment dated October 7, 1998, Alliance assigned the defendant's mortgages to the plaintiff as trustee. The plaintiff, as the holder of the notes, then was entitled to enforce their provisions. The defendant defaulted on payment of the notes and, on July 12, 1999, the plaintiff commenced the present foreclosure actions. On August 7, 2000, the plaintiff filed motions for summary judgment as to liability. The court granted the plaintiff's motion as to the 3333 Main Street property on November 1, 2000, and as to the 3060 Main Street property on January 16, 2001. A sale date was set by the court for each property. This appeal followed. Additional facts will be set forth as necessary.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *LoRicco* v. *Pantani*, 67 Conn. App. 681, 683–84, 789 A.2d 514 (2002).

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . Further,

the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the court rendered judgment for the plaintiffs as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Internal quotation marks omitted.) *LaSalle National Bank* v. *Shook*, 67 Conn. App. 93, 95–96, 787 A.2d 32 (2001).

I

The defendant's first claim on appeal is that the court improperly relied on transcript testimony as a judicial admission. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. Prior to filing its motions for summary judgment, the plaintiff filed a motion for the appointment of a receiver of rents. Before deciding that motion, the court held a hearing during which testimony was given. As part of the documentary evidence submitted for the court to consider in deciding the motions for summary judgment, the plaintiff included a transcript of the testimony provided by Owen during the hearing on the motion for the appointment of a receiver of rents. The following colloquy took place between Owen and the plaintiff's attorney during the hearing:

"[Plaintiff's Counsel]: So, is it a fair assumption for the court that the reason why you weren't making mortgage

payments was because you were using the income flow from the property plus whatever moneys that you obtained out of the mortgage due to a better and bigger deal or at least another real estate deal?

"Owen: Yes, that's true.

\* \* \*

"[Plaintiff's Counsel]: And you are aware that you did sign documents including an assignment of rents to the bank if you didn't pay the mortgage; is that right?

"Owen: Yes, that's true."

It is the defendant's contention that the court's reliance on Owen's testimony was improper.

In its appellate brief, the defendant refers to case law that relates to whether a court can consider deposition testimony in deciding a motion for summary judgment. The court, however, was not presented with deposition testimony, but rather a transcript of a witness' testimony during a judicial proceeding. As the court stated in its memorandum of decision: "That testimony is not deposition testimony because it was not taken for the purpose of discovery, but for a definite evidentiary purpose directly related to the plaintiff's application for the appointment of a receiver of rents. Moreover, the court has had the unique opportunity to observe the witness firsthand and assess his credibility in contrast to a deposition proceeding where no such opportunity is offered."

The defendant essentially contends that the court improperly treated Owen's testimony from the rent receiver proceeding as a judicial admission and, therefore, incorrectly found that his testimony should be regarded as conclusive. See *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 695 n.7, 651 A.2d 1286 (1995). "Judicial admissions are voluntary and knowing

concessions of fact by a party or a party's attorney occurring during judicial proceedings." *Jones* v. *Forst*, 41 Conn. App. 341, 346, 675 A.2d 922 (1996). The determination of whether a party's statement is a judicial admission or an evidentiary admission is a question of fact for the trial court. *Tianti* v. *William Raveis Real Estate, Inc.*, supra, 694–95. "The distinction between judicial admissions and mere evidentiary admissions is a significant one that should not be blurred by imprecise usage. . . . While both types are admissible, their legal effect is markedly different; judicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted or rejected by the trier." (Internal quotation marks omitted.) Id., 695 n.6.

In considering Owen's testimony, the trial court noted that "[a]ll of the statements Nicholas Owen made . . . at the hearing on the application for appointment of rent receiver . . . constitute admissions, which are unequivocal and unmistakable." The court proceeded to distinguish Owen's testimony from deposition testimony, which is not conclusive as a judicial admission. See *Collum* v. *Chapin*, 40 Conn. App. 449, 450 n.2, 671 A.2d 1329 (1996). Although the court did not expressly characterize Owen's testimony as a *judicial* admission, it indicated that it regarded Owen's testimony as such by carefully distinguishing deposition testimony from the testimony given by Owen in the earlier proceeding. Given that the court had the opportunity to observe Owen and to assess his credibility at the rent receiver proceeding, we conclude that the court correctly determined that Owen's testimony at that proceeding should be treated as a judicial admission.

II

The defendant next claims that the court improperly considered the uncertified transcript of Owen's testi-

mony when it decided the motions for summary judgment. We disagree.

"A motion for summary judgment shall be supported by such documents as may be appropriate, including *but not limited to* affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." (Emphasis added.) Practice Book § 17-45. The inclusion of the phrase "but not limited to" indicates that the list that follows is nonexclusive. Nowhere in the language of Practice Book § 17-45 does it state that the transcripts *must* be certified for them to be considered by the court.

In its brief to this court, the defendant correctly points to language in the author's comments to an annotated version of Practice Book § 17-46, which states that some trial court decisions require transcripts to be certified before they may be used to support a motion for summary judgment.[2] See W. Horton & K. Knox, 1A Connecticut Practice Series: Practice Book Annotated (4th Ed. 1998) § 17-46, comments, p. 58. Although there is a division among the trial courts on the issue of the admissibility of uncertified copies of transcripts, we need not resolve that question here because "[u]nsworn documents attached to a [party's] motion for summary judgment [are] properly considered [where they also are] contained in the court file from a prior action between the parties of which the trial court could take judicial notice." Id., (Sup. 2002) p. 16, citing *Hryniewicz* v. *Wilson*, 51 Conn. App. 440, 444, 722 A.2d 288 (1999). In this case, the transcript that the plaintiff provided in support of its motion for summary judgment did not contain a certification page. In the court file, however, there was an identical version of the transcript, dated

---

[2] It should be pointed out, however, that this court is not bound by trial court decisions. *Schallenkamp* v. *DelPonte*, 29 Conn. App. 576, 581 n.7, 616 A.2d 1157 (1992), aff'd, 229 Conn. 31, 639 A.2d 1018 (1994).

June 8, 2000, with a certification page of which the court could have taken judicial notice. Accordingly, we conclude that it was appropriate for the court to consider the transcript in deciding the motions for summary judgment.

## III

The defendant's third claim on appeal is that the court improperly relied on the affidavit of Colleen Withers, a litigation specialist for Superior Bank, in deciding the motions for summary judgment. This claim is without merit.

The following additional facts are necessary for our resolution of the defendant's claim. The plaintiff originally filed its motions for summary judgment on June 20, 2000. In support of its motion, the plaintiff included the affidavit of Withers. On July 26, 2000, the court ordered both parties to withdraw all motions and memoranda related to the summary judgment motion and to refile a synthesized version of the previously filed documents by August 7, 2000. In its new motion for summary judgment, the plaintiff did not include the affidavit from Withers, but replaced it with an affidavit from Carol Connor, a loss mitigation manager for Superior Bank. There is no evidence that the court considered the affidavit of Withers in deciding the motion for summary judgment. On the contrary, in its memorandum of decision, the court relied on the affidavit of Connor, which was properly before the court, and did not discuss the affidavit of Withers, which was withdrawn. Accordingly, the defendant's claim is without merit.

## IV

The defendant next claims that the court improperly granted the plaintiff's summary judgment motions

despite the special defenses that it had raised.[3] Specifically, the defendant argues that summary judgment should not have been granted based on (1) the implied covenant of good faith and fair dealing, (2) the doctrine of unclean hands, (3) the common-law duty of good faith and fair dealing, (4) the doctrine of unconscionability and (5) the doctrine of equitable estoppel. We will address each special defense in turn.

"[A] foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . .

"Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . or, if there had never been a valid lien. . . . The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles." (Citations omitted; internal quotation marks omitted.) *LaSalle National Bank* v. *Shook*, supra, 67 Conn. App. 96–97. "[O]ur courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had . . . .

---

[3] The court found that the defendant had not properly raised those defenses, but the court nonetheless addressed them as if they had been asserted properly. See part V.

Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Internal quotation marks omitted.) *New Haven Savings Bank* v. *LaPlace*, 66 Conn. App. 1, 10, 783 A.2d 1174, cert. denied, 258 Conn. 942, 786 A.2d 426 (2001).

A

The defendant claims that the court failed to find that the plaintiff breached the implied covenant of good faith and fair dealing when it failed to accept payments, refused to apply payments to the debt and refused to accept future payments. We disagree.

"The implied covenant of good faith and fair dealing requires faithfulness to an agreed common purpose and consistency with the justified expectation of the other party in the performance of every contract. . . . Essentially, it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Citation omitted; internal quotation marks omitted.) *Southbridge Associates, LLC* v. *Garofalo*, 53 Conn. App. 11, 16, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

The defendant tendered two checks to the plaintiff, one dated December 8, 1998, and the other dated December 28, 1998. Between December 28, 1998, and June 28, 1999, when the underlying actions commenced, the defendant failed to submit any further mortgage payments. The only evidence the defendant has provided to support its claim that additional payments were tendered and rejected consisted of two checks, dated September 7, 1999, which the plaintiff did not accept. Those checks, however, were not presented to the plain-

tiff until three months after the underlying actions were instituted.

We recently stated that "special defenses and counterclaims alleging a breach of an implied covenant of good faith and fair dealing . . . are not equitable defenses to a mortgage foreclosure." *New Haven Savings Bank* v. *LaPlace*, supra, 66 Conn. App. 10; see also *Southbridge Associates, LLC* v. *Garofalo*, supra, 53 Conn. App. 16–19. Even if a breach of the implied covenant of good faith and fair dealing were an equitable defense to a mortgage foreclosure, the clear language of the mortgage and the note fails to support the defendant's claim that the plaintiff breached such an implied covenant. The plain language of the documents provides that the defendant was to pay the plaintiff monthly installments of $2634.25 beginning on November 1, 1998, and that, in the event of default, the plaintiff had the right "to accelerate the indebtedness to become immediately due and payable and to sue on the Note." Nothing in either document requires the plaintiff to renegotiate with the defendant or to accept less than the amount provided for in the mortgage. Also, the plaintiff had no obligation to accept the checks that were offered on September 7, 1999, when the defendant had been in default for more than eight months. The clearly expressed terms of the mortgage and note support a finding that there was no genuine issue of material fact that the plaintiff did not breach the implied covenant of good faith and fair dealing.

B

The defendant next claims that the court improperly rendered summary judgment despite the plaintiff's having unclean hands for refusing to accept future payments. That claim is without merit.

"The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must

show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Internal quotation marks omitted.) *Thompson* v. *Orcutt*, 257 Conn. 301, 310, 777 A.2d 670 (2001).

As we stated in part IV A, the plaintiff did not have an obligation to renegotiate the terms of the agreement upon the event of the defendant's default; nor did the plaintiff have to accept payment after the indebtedness was accelerated due to the default. Accordingly, because the plaintiff's conduct was not of " 'such a character as to be condemned and pronounced wrongful by honest and fair-minded people' "; id.; there is no genuine issue of material fact that the clean hands doctrine does not apply.

C

The defendant next claims that the court improperly rendered summary judgment despite the plaintiff's breach of the common-law duty of good faith and fair dealing. We disagree.

"The common-law duty of good faith and fair dealing implicit in every contract requires that neither party [will] do anything that will injure the right of the other to receive the benefits of the agreement. . . . Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." (Internal quotation marks omitted.) *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 665, 778 A.2d 237 (2001). As we discussed in part IV A, a reading of the unambiguous language of the mortgage and note negates any claim that the plaintiff did not comply with the common-law duty of good faith and fair dealing.

D

The defendant next claims that the court improperly rendered summary judgment despite the doctrine of unconscionability. It is the defendant's contention that the plaintiff's alleged desire to leave the commercial real estate loan business represented a "superior, dominant bargaining position to force [the defendant] to accept unconscionable terms." We disagree.

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. . . . As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. . . . As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, [t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing *at the time of the making of the contract.* . . . Unconscionability is determined on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Citations omitted; emphasis added; internal quotation marks omitted.) *Family Financial Services, Inc.* v. *Spencer,* 41 Conn. App. 754, 763, 677 A.2d 479 (1996). Because unconscionability is judged at the time of the making of the contract, and the defendant's claim rests on alleged actions taken by the plaintiff subsequent to the making of the contract, the doctrine of unconscionability is not applicable to this case. Thus, a genuine issue of material fact does not exist as to the defendant's claim that the doctrine of unconscionability precluded summary judgment in the plaintiff's favor.

E

The defendant next claims that the court improperly rendered summary judgment notwithstanding the doctrine of equitable estoppel. That claim is without merit.

"Our Supreme Court . . . stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) *SKW Real Estate Ltd. Partnership* v. *Mitsubishi Motor Sales of America, Inc.*, 56 Conn. App. 1, 8, 741 A.2d 4 (1999), cert. denied, 252 Conn. 931, 746 A.2d 793 (2000); see also 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60b, p. 365 & (Cum. Sup. 2001) pp. 385–86.

In its appellate brief, the defendant has failed to state how it was misled by the plaintiff's conduct. Without a showing that the defendant was misled, its argument that the doctrine of equitable estoppel should have precluded the court from rendering summary judgment has no basis.

V

The defendant's final claim on appeal is that the court relied on the absence of an answer as grounds for the rendering of summary judgment. The defendant contends that the court did not consider its special defenses when it decided the summary judgment motions. That claim is without merit.

Although the court stated in its memorandum of decision that "the defendant is technically barred from arguing special defenses which it has not asserted," it specifically addressed each of the defendant's special defenses and found that they did not apply to the defendant's case. Additionally, our review of the defendant's special defenses in part IV supports the court's determination that they were not applicable to the facts of this case.

The court properly concluded that there was no genuine issue as to any material fact and that the plaintiff was entitled to judgment as a matter of law. Further, all the special defenses raised by the defendant are without merit.

The judgments are affirmed and the cases are remanded for the purpose of setting new sale dates.

In this opinion the other judges concurred.

